Michael I. KROLL, Plaintiff–Appellant,

v.

Frank A. FINNERTY, Jr., Chief Counsel for the New York State Grievance Committee for the Tenth Judicial District, Defendant–Appellee.

No. 00–1176.

United States Court of Appeals, Federal Circuit.

March 21, 2001.

Edwin D. Schindler, of Coram, NY, argued for plaintiff-appellant.

Melanie L. Oxhorn, Assistant Solicitor General, Office of the Attorney General of the State of New York, of New York, NY, argued for the defendant-appellee. With her on the brief was Eliot Spitzer, Attorney General of the State of New York. Of counsel was Robert K. Drinan, of Mineola, NY.

Before MICHEL, Circuit Judge, SMITH, Senior Circuit Judge,* and GAJARSA, Circuit Judge.

MICHEL, Circuit Judge.

This is an attorney misconduct case that concerns the scope of federal patent jurisdiction. Michael Kroll appeals from the November 12, 1999 judgment of the United States District Court for the Eastern District of New York, entered upon the district court's November 9, 1999 order granting summary judgment in favor of Frank Finnerty (nominal defendant for the New York State Grievance Committee, or

---

* Judge Smith heard oral argument in this case but did not participate further because of illness.

"Grievance Committee") and dismissing Kroll's complaint seeking a declaratory judgment that federal patent law preempts the Grievance Committee's authority to bring disciplinary action against him. On January 7, 2000, Kroll filed a notice of appeal to this court. To the extent that the district court properly premised its decision on 28 U.S.C. § 1338(a), we have exclusive appellate jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). We heard oral arguments in this case on December 8, 2000. Because we conclude that Kroll's assertion of federal jurisdiction is insubstantial and devoid of merit, we vacate the trial court's grant of summary judgment and remand the case for the district court to dismiss the complaint for lack of subject matter jurisdiction. The complaint simply fails to invoke federal question jurisdiction under 28 U.S.C. § 1331 or patent jurisdiction under 28 U.S.C. § 1338(a).

## I. Background

### A. Kroll's Alleged Misconduct

Michael Kroll was and is a member of the Bar of the State of New York and is also registered to practice as a patent attorney before the United States Patent and Trademark Office ("PTO"). As described below, the Grievance Committee initiated disciplinary action against Kroll in response to grievances filed by the following three clients regarding Kroll's patent prosecution practice on their behalf.

### 1. Elly Ildiko Elias

In approximately 1990, Elly Ildiko Elias conceived of the idea of making a "LOVE BED" for dogs and puppies. As described in a letter she later wrote to her Congressman, she contacted Kroll through the Yellow Pages, and after putting "faith and trust in [his] advertisement," paid him $8425 to obtain a patent claiming her invention. On August 28, 1990, Kroll filed a patent application on her behalf, which,

according to Elias, disclosed that the LOVE BED could be made of wood, with mattress, bed sheets, narrow pillow, with pillow cases, and that the LOVE BED could come in different sizes, and would be a great gift idea.

Approximately one year later, Elias was looking through an L.L. Bean Inc. catalogue, and saw a dog bed for sale, allegedly very similar to the one described in her patent application. When Elias called Kroll to report this possible act of infringement, he was "not very nice," and he allegedly rebuffed her subsequent calls inquiring about the progress of her patent application, stating only that "it will take a very long time." It was not until the summer of 1992, when Elias contacted another attorney to investigate the matter, that Kroll disclosed to her that the PTO actually had rejected her application in July 1991.

Upset over Kroll's failure to inform her promptly of the rejection, Elias wrote a letter to her Congressman, who forwarded the complaint to the Grievance Committee. The Grievance Committee informed Kroll of the matter and dismissed the complaint, subject to Kroll's future compliance with his professional responsibilities.

### 2. Charles Strieber

In January 1993, Charles Strieber hired Kroll to file a patent application on his behalf. For approximately $21,000, Kroll prepared several dozen drawings, but never finalized the application. In April 1995, Strieber terminated Kroll's representation, and requested by phone an accounting of his payments and the return of his files. On August 11, 1995, Strieber wrote Kroll a letter (signed, "Zombies for Ever, Charles Strieber"), repeating his request. On September 16, 1996, his request still unfulfilled, Strieber filed a complaint with the Grievance Committee.

### 3. Vincent Davi

On March 2, 1996, Vincent Davi gave Kroll his credit card number and autho-

rized a charge of $825.00 to initiate a patent application. Kroll charged $850.00 to the card on March 2, 1996, an additional $800.00 on March 8, 1996, and a further $1850.00 on March 10, 1996. After repeatedly calling Kroll, insisting that he credit his account for the overcharges, Davi closed his credit card account, initiated a fraud investigation, and filed a complaint with the Grievance Committee.

## B. The District Court Litigation

On June 30, 1997, Kroll filed suit in the U.S. District Court for the Eastern District of New York, seeking a declaratory judgment that federal patent law preempts the Grievance Committee's subject matter jurisdiction to consider the Elias, Strieber, and Davi grievances. Kroll asserts that 35 U.S.C. § 2(b)(2)(D) and 35 U.S.C. § 32, which grant the PTO the authority to regulate the practice of patent law before the PTO, preempt the authority of the Grievance Committee to discipline him for conduct arising out of his patent prosecution practice.[1] Kroll argues that his suit constitutes a "civil action arising under any Act of Congress relating to patents," and thus that the federal district court had jurisdiction, pursuant to 28 U.S.C. § 1338(a).

The Grievance Committee moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), and moved for summary judgment pursuant to Fed.R.Civ.P. 56. According to the district court, on May 14, 1999, the Grievance Committee dismissed Davi's and Strieber's allegations without qualification. As to Kroll's challenge to the Elias grievance, the district court ruled that the conditional nature of the Grievance Committee's dismissal of that complaint gave rise to a sufficient case or controversy to permit Kroll to seek a declaratory judgment. The court stated, moreover, that resolution of the dispute would require judicial interpretation of 28 U.S.C § 1338(a), 35 U.S.C. § 2(b)(2)(D), and 35 U.S.C. § 32, and thus that Kroll had "asserted a colorable federal claim arising under federal law" sufficient to establish federal jurisdiction. The district court, reasoning that allowing the state to discipline a member of its own bar would not frustrate the objectives of the patent system, granted the Grievance Committee's motion for summary judgment that federal patent law does not preempt the authority of the Grievance Committee to discipline Kroll.

## II. Discussion

### A. Legal Standard for Dismissal of Meritless Claims for Lack of Subject Matter Jurisdiction

■ A court must dismiss a complaint for lack of subject matter jurisdiction when the alleged basis for exercising federal jurisdiction is "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Although the Supreme Court has cautioned against dismissing complaints for lack of subject matter jurisdiction when unstated questions of federal law may underlie a complainant's cause of action, *see id.* at 536–38, 94 S.Ct. 1372, in this case the sole basis for alleging federal preemption, and hence federal jurisdiction, is plainly evident from the complaint.

■ Kroll asserts that the district court had jurisdiction to hear his declaratory

---

1. The proceedings below refer to 35 U.S.C. §§ 31–32 (1994) as the relevant statutes. Recent amendments recodified 35 U.S.C. § 31 (1994) as 35 U.S.C. § 2(b)(2)(D) (West Supp. 2000). *See* Pub.L. No. 106–113, § 4712, 113 Stat. 1501A–572 (Nov. 29, 1999). The amendments, which for the purposes of this opinion did not materially alter prior law, changed the title of the head of the PTO from "Commissioner" to "Director."For consistency, this opinion will refer throughout to the present codification.

judgment complaint pursuant to 28 U.S.C. § 1338(a), which grants federal district courts jurisdiction to adjudicate any "civil action arising under any Act of Congress relating to patents ." The Supreme Court has interpreted this provision to confer jurisdiction upon district courts when "a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *see also Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1325, 47 USPQ2d 1769, 1773 (Fed.Cir.1998) (overruled on other grounds by *Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 50 USPQ2d 1672 (Fed.Cir.1999)).

Kroll's preemption claim rests on 35 U.S.C. § 2(b)(2)(D) and 35 U .S.C. § 32, which authorize the PTO to regulate the conduct of patent practitioners appearing before it, and to discipline them for related misconduct. The first of these statutes provides that the PTO may establish regulations governing patent practitioners:

> (b) The [United States Patent and Trademark] office
>
> . . .
>
> (2) may establish regulations, not inconsistent with law, which
>
> . . .
>
> (D) may govern the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Office, and may require them, before being recognized as representatives of applicants or other persons, to show that they are of good moral character and reputation and are possessed of the

> necessary qualifications to render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office.

35 U.S.C. § 2(b)(2)(D).

The Director of the PTO has authority to discipline malfeasant patent practitioners pursuant to 35 U.S.C. § 32, which provides:

> The Director may, after notice and opportunity for a hearing, suspend or exclude, either generally or in any particular case, from further practice before the Patent and Trademark Office, any person, agent, or attorney shown to be incompetent or disreputable, or guilty of gross misconduct, or who does not comply with the regulations established under section 2(b)(2)(D) of this title, or who shall, by word, circular, letter, or advertising, with intent to defraud in any manner, deceive, mislead, or threaten any applicant or prospective applicant, or other person having immediate or prospective business before the Office. The reasons for any such suspension or exclusion shall be duly recorded. The Director shall have the discretion to designate any attorney who is an office or employee of the United States Patent and Trademark Office to conduct the hearing required by this section. The United States District Court for the District of Columbia, under such conditions and upon such proceedings· as it by its rules determines, may review the action of the Director upon the petition of the person so refused recognition or so suspended or excluded.

35 U.S.C. § 32.

The question for appeal is whether either of these statutes creates a cause of action entitling Kroll to relief, or whether Kroll's preemption argument raises "a substantial question of federal patent law."

*Christianson,* 486 U.S. at 808–09, 108 S.Ct. 2166.

## B. The Scope of Federal Preemption

 A fundamental principle of the Constitution is that Congress has the power to preempt state law. U.S. Const. art. VI, cl. 2; *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 120 S.Ct. 2288, 2294–95, 147 L.Ed.2d 352 (2000) (citing cases). Federal statutes may contain express statements that they preempt state law. *Crosby,* 120 S.Ct. at 2294. Even without an express provision for preemption in a federal statute, state law must yield to a congressional Act in at least two circumstances. First, when Congress intends federal law to "occupy the field," state law in that area is altogether preempted under the doctrine of "field preemption." *Id.* (citing cases). And even if Congress has not occupied the field, state law is still preempted to the extent of any conflict with a federal statute. *Id.* (citing cases). "Conflict preemption" is found where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.*

As far as express preemption is concerned in this case, it is clear that there is none. The text of 35 U.S.C. § 2(b)(2)(D) and 35 U.S.C. § 32 gives no indication that either of these statutes are intended to preempt the authority of states to punish attorneys who violate ethical duties under state law. These statutes certainly do not "create[ ] the cause of action" that Kroll asserts. *Christianson,* 486 U.S. at 808–09, 108 S.Ct. 2166. Indeed, the regulations promulgated pursuant to these statutes make clear that, while the Director is entitled to regulate the conduct of patent practitioners before the PTO, the Director's authority is not intended to preempt states' authority to discipline attorneys. The first paragraph of the PTO's regulations governing the conduct of patent practitioners states:

> This part governs *solely* the practice of patent, trademark, and other law *before the Patent and Trademark Office. Nothing in this part shall be construed to preempt the authority of each State to regulate the practice of law,* except to the extent necessary for the Patent and Trademark Office to accomplish its Federal objectives.

37 C.F.R. § 10.1 (emphasis added). Far from express preemption, PTO regulations expressly disavow an intent to preempt state laws governing the practice of law.

 As for field preemption and conflict preemption, there is indeed a limited field of law where the PTO's powers under 35 U.S.C. § 2(b)(2)(D) and 35 U.S.C. § 32 do preempt state law. Under these statutes, the PTO has the exclusive authority to establish qualifications for admitting persons to practice before it, and to suspend or exclude them from practicing before it. A state, for example, may not impose additional licensing requirements beyond those required by federal law to permit a non-lawyer patent agent to practice before the PTO. In *Sperry v. State of Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), the U.S. Supreme Court ruled that the State of Florida could not enjoin a local patent practitioner, who was not admitted to the State Bar of Florida, from preparing patent applications and other legal instruments that are filed solely in the PTO. *See id.* at 385, 83 S.Ct. 1322. To do so, the Court reasoned, would "hinder or obstruct the free use of a license granted under an act of Congress." *Id.* (quoting *Pennsylvania v. Wheeling & Belmont Bridge Co.,* 54 U.S. 518, 566, 13 How. 518, 14 L.Ed. 249 (1851)). Thus, the PTO has exclusive authority to establish qualifications and procedures for admitting persons to practice before the PTO, and to suspend or exclude those patent practitioners from practicing before the PTO. In this case,

because the State of New York is not seeking to suspend or expel Kroll from practicing before the PTO, the conduct of the Grievance Committee does not fall within the field of preemption outlined by *Sperry.*

■ The scope of field preemption under 35 U.S.C. § 2(b)(2)(D) and 35 U.S.C. § 32 is narrower than the range of the Director's powers under those statutes. The Director has the authority to "suspend or exclude ... from further practice before the Patent and Trademark Office, any ... attorney shown to be incompetent or disreputable, or guilty of gross misconduct." 35 U.S.C. § 2(b)(2)(D). This statute grants the Director broad authority to discipline patent practitioners for incompetence and a wide range of misconduct, much of which falls within the disciplinary authority of the states. That the PTO and the states may share jurisdiction over certain disciplinary matters, however, does not mean that the states' authority is preempted. To the contrary, the Supreme Court emphasized in *Sperry* that "the State maintains control over the practice of law within its borders except to the limited extent necessary for the accomplishment of federal objectives." *Sperry,* 373 U.S. at 402, 83 S.Ct. 1322. Here, the Grievance Committee has threatened to discipline Kroll for failing to promptly inform Elly Ildiko Elias that her LOVE BED patent application was rejected by the Patent Office. It is beyond serious argument to suggest that such state action would frustrate the ability of the PTO to accomplish its federal objectives. Kroll's alleged mistreatment of Elias involved only communications, or the lack thereof, between the lawyer and the client. The alleged misconduct in this case is not entitled to any special consideration just because a patent is involved. The state ethical violation would be no different if Kroll had failed to advise his client of a state court decision, for example.

Kroll's contentions are particularly unfounded considering that he is not only enrolled with the PTO, but is also a member of the State Bar of New York. Kroll, of course, did not have to join the New York Bar to practice before the PTO. By choosing to join the New York Bar, and thus committing to abide by its Code of Professional Responsibility, he voluntarily submitted himself to the jurisdiction of the Grievance Committee. The Grievance Committee is free to punish him, and indeed to disbar him, for violations of his duties arising under the Code. Kroll identifies no authority even suggesting that federal patent law preempts the authority of a state bar from disciplining its own members for failing to comply with the state's Code of Professional Responsibility. But even were the Grievance Committee to disbar Kroll, there would still be no conflict with federal law. Because Kroll is enrolled to practice before the PTO, he could continue to do so unless also expelled by the Director. Thus, the respective powers of the Grievance Committee and the Director can be exercised without conflict. Indeed, by disciplining patent attorneys who violate their ethical duties to clients, the Grievance Committee would advance the goals of the patent laws by promoting better relationships between patent lawyers and their clients.

Because, as noted above, neither 35 U.S.C. § 2(b)(2)(D) nor 35 U.S.C. § 32 "create[ ] the cause of action" asserted by Kroll, he must show that his preemption argument poses a "substantial question of federal patent law." *Christianson,* 486 U.S. at 808–09, 108 S.Ct. 2166. Here, Kroll's alleged misconduct involved reported ethical lapses having nothing to do with substantive patent law. The violations alleged by the Grievance Committee concern breaches of the duties he swore to uphold as a condition of his voluntary membership in the Bar of the State of New York. Although resolving his complaint certainly

requires an understanding of 35 U.S.C. § 2(b)(2)(D) and 35 U.S.C. § 32, as well as a review of the case law and PTO regulations concerning these two statutes, it is readily apparent that Kroll's alleged misconduct simply does not raise a colorable question of preemption. Particularly in light of 37 C.F.R. § 10.1, which generally disavows preemption of the authority of each State to regulate the practice of law, we cannot agree that Kroll's preemption argument poses a "substantial question of federal patent law." *Christianson*, 486 U.S. at 808–09, 108 S.Ct. 2166.

Kroll points to several cases regarding PTO disciplinary actions, and urges that his case should similarly be accorded federal jurisdiction. *Wyden v. Commissioner*, 807 F.2d 934, 231 USPQ 918 (Fed.Cir. 1986), holds that an applicant who failed the PTO examination, and who sued to overturn the PTO's decision, stated a federal claim "relating to patents" that falls within the Federal Circuit's exclusive jurisdiction, rather than that of a regional circuit court. *Wyden*, of course, is inapposite because the PTO has taken no disciplinary action against Kroll.

Two other cases relied on by Kroll concern disciplinary decisions by the PTO that were initially appealed to regional circuits, and then transferred to the Federal Circuit. *See Franchi v. Manbeck*, 947 F.2d 631 (2d Cir.1991) (transferring to the Federal Circuit complaint of wrongful denial of admission to PTO bar); *Jaskiewicz v. Mossinghoff*, 802 F.2d 532 (D.C.Cir.1986) (transferring to the Federal Circuit appeal from decision by PTO to suspend patent attorney for misconduct). Like *Wyden*, these cases are irrelevant to the present appeal because the PTO has not acted to discipline Kroll. If the Director decides to exercise his authority pursuant to 35 U.S.C. § 32 to discipline Kroll, then Kroll presumably would be entitled to federal review of the Director's decision, including in this court.

Kroll also relies on *People v. Miller*, 23 A.D.2d 144, 259 N.Y.S.2d 647 (N.Y.App. Div.1965), which recognizes that states are limited in their authority to compel *non-attorney* members of the patent bar to conform to requirements of the state bar. In *Miller*, a non-attorney advertised his services as a "patent attorney" after being granted that title by the PTO prior to 1938, before which time the PTO did not distinguish between "patent attorneys" and "patent agents." *See id.* at 146, 259 N.Y.S.2d 647. The court concluded that, absent a showing that the defendant was engaged in the practice of law distinct from matters before the PTO, the state could not prohibit him from using the federally granted title of "patent attorney." *See id.* at 146–47, 259 N.Y.S.2d 647. As above, *Miller* is of no help to Kroll, because, as an attorney and a member of the New York Bar, Kroll is subject to its professional responsibility standards.

In the present case, the district court, noting that Kroll had pled federal preemption based upon 35 U.S.C. § 2(b)(2)(D) and 35 U.S.C. § 32, and recognizing that the Supreme Court had previously held in *Sperry* that these statutes give rise to a limited field of federal preemption, may have been reluctant to grant the Grievance Committee's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Finding that Kroll had "asserted a colorable federal claim arising under federal law," the court proceeded to dispose of this case at the summary judgment stage, and found for the Grievance Committee on the merits. We hold, however, that Kroll's allegation of preemption is "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans*, 415 U.S. at 536–37, 94 S.Ct. 1372. We rule that the district court lacked jurisdiction to proceed to the merits of the case, and thus that the district court's judgment must be vacated. Accordingly, we remand to the district court for the purpose of dismissing Kroll's com-

plaint for lack of subject matter jurisdiction. For the above reasons, the district court's judgment and the case are, respectively,

*VACATED* and *REMANDED.*

### Costs

Costs to Frank Finnerty, nominal defendant for New York State Grievance Committee.