**MAX–PLANCK–GESELLSCHAFT ZUR FOERDERUNG DER WISSENSCHAFTEN E.V., Plaintiff,**

v.

**WOLF GREENFIELD & SACKS, PC, Defendant.**

**Civil Action No. 09–11168–PBS.**

United States District Court, D. Massachusetts.

Oct. 14, 2009.

Timothy J. Dacey, III, Goulston & Storrs, PC, Elizabeth Levine Schnairsohn, Richard M. Zielinsk, Goulston & Storrs, PC, Boston, MA, for Defendant.

Michael E. Mone, Sr., Catherine A. Ryan, Esdaile, Barrett & Esdaile, Boston, MA, for Plaintiff.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. Introduction

Max–Planck–Gesellschaft Zur Foerderung der Wissenschaften E.V. ("Max–Planck") brought this action against the law firm Wolf Greenfield & Sacks, PC ("Wolf Greenfield"), alleging that its attor-

neys,[1] Wolf Greenfield, have an impermissible conflict of interest because they represent joint clients with adverse interests in the prosecution of a patent application before the United States Patent and Trademark Office ("USPTO"). Max–Planck asserted state law claims for legal malpractice and breach of fiduciary duty, and requested a declaratory judgment. Plaintiff seeks money damages and the removal of Wolf Greenfield as its counsel before the USPTO for the prosecution of the Tuschl I patent applications. The Defendant removed the suit to federal court on the ground that Plaintiff's claims necessarily require the interpretation of patent laws, resulting in federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1338(a). Arguing that there is no substantial and disputed federal issue, Plaintiff seeks remand to state court. Plaintiff's motion to remand is *DENIED.*

## II. *Background*

Max–Planck brought suit against Wolf Greenfield, alleging that the firm has violated professional standards through its joint representation of the co-owners of intellectual property reflected in a family of patent applications referred to as the "Tuschl I applications." Plaintiff claims that conflict has developed among the co-owners of the Tuschl I patent applications over the inclusion of certain inventions owned exclusively by Max–Planck in the Tuschl I applications. As a result of this conflict, Plaintiff claims that Wolf Greenfield, the law firm prosecuting the Tuschl I applications on behalf of all the co-owners, has an impermissible conflict of interest.

This Court has heard a related case brought by Max–Planck against the co-owners of the intellectual property involved in the Tuschl I applications and has fully explained the facts underlying the conflict between Max–Planck and the other co-owners in a prior opinion. *See Max–Planck–Gesellschaft Zur Forderung Der Wissenschaften E.V. v. Whitehead Inst. for Biomedical Research,* 650 F.Supp.2d 114 (D.Mass.2009). The Court assumes the parties' familiarity with those facts.

Max–Planck notified Wolf Greenfield of the seriousness of the conflict of interest shared by its joint clients in a letter sent on July 7, 2009. This letter sought Wolf Greenfield's immediate withdrawal from the joint representation and gave a deadline of the end of business on July 8, 2009 to respond to the letter. After allegedly receiving no response, Max–Planck filed this action in state court on July 10, 2009.

On the same day this action was filed, Wolf Greenfield removed it to federal court, claiming federal question jurisdiction under 28 U.S.C. § 1331 and § 1338(a). Under Wolf Greenfield's analysis, the resolution of this action will require the determination of a substantial issue of federal patent law, resulting in the exclusive jurisdiction of the United States District Court. Max–Planck subsequently moved to remand this action to state court, and the Court held a hearing on July 30, 2009.

Meanwhile, Max–Planck filed petitions with the USPTO seeking permission to revoke each Power of Attorney it had executed in favor of Wolf Greenfield in connection with the Tuschl I patent applications. On September 9, 2009, Max–Planck informed the Court that the USPTO had granted each of its petitions on the basis of the "divergent interests" of Max–Planck and the other co-owners. *See* Pl.'s Letter filed Sept. 9, 2009, Ex. A, in *Max–Planck v. Whitehead Inst. for Biomedical Re-*

---

1. The Defendant disputes Plaintiff's claim that an attorney-client relationship exists between the two parties. It is unnecessary to deter- mine this issue for the purposes of the motion to remand.

*search,* No. 1:09–cv–11116–PBS (Dkt. No. 85).

## III. *DISCUSSION*

 A party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction. *See BIW Deceived v. Local S6,* 132 F.3d 824, 831 (1st Cir.1997). Because the removal statute should be strictly construed, any doubts about the propriety of removal should be construed against the party seeking removal. *See, e.g., Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir.1999). Jurisdiction must be evident from the basis of the well-pleaded complaint; a defense based in federal law is inadequate to confer jurisdiction on this Court. *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

 In the patent law context, jurisdiction under 28 U.S.C. § 1338(a) extends

> to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

*Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Courts have focused on three distinct requirements within the language of *Christianson* in analyzing the jurisdictional reach of § 1338(a): (1) the "well-pleaded complaint" rule, (2) the necessary element requirement, and (3) the substantial question requirement. *See Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1328–29 (Fed. Cir.1998); *see also Heineken Technical Servs., B.V. v. Darby,* 103 F.Supp.2d 476, 478 (D.Mass.2000).

### 1. *No Federal Preemption*

 The Defendant advances two principal arguments in opposition to Max–Planck's Motion to Remand. First, Wolf Greenfield argues that the Massachusetts Rules of Professional Conduct do not apply to this case because prosecutions before the USPTO are regulated by the PTO Code, and therefore remand to state court would be inappropriate. *See* Def.'s Sur–Reply at 2 (citing *Anderson v. Eppstein,* 2001 WL 583152, 11 n. 6, 2001 Pat. App. Lexis 1, 26 n. 6 (Bd.App. & Interf.2001)). However, the Federal Circuit has clearly held that the PTO Code does not preempt "the authority of states to punish attorneys who violate ethical duties under state law." *Kroll v. Finnerty,* 242 F.3d 1359, 1364 (Fed.Cir.2001). "Indeed, the regulations promulgated pursuant to [35 U.S.C. § 2(b)(2)(D) and 35 U.S.C. § 32] make clear that, while the Director is entitled to regulate the conduct of patent practitioners before the PTO, the Director's authority is not intended to preempt states' authority to discipline attorneys." *Id.* Accordingly, this Court finds that Wolf Greenfield's argument regarding federal preemption of the Massachusetts Rules has no merit.

### 2. *Legal Malpractice*

 The Defendant's second argument centers around the causation requirement of a legal malpractice claim. Under Massachusetts law, the elements of a claim for legal malpractice are: (1) the attorney failed to exercise reasonable care and skill in handling the matter for which he was retained; (2) the client incurred a loss; and (3) the attorney's negligence is the proximate cause of the loss. *LaBelle v. McGonagle,* 2008 WL 3842998 (D.Mass. Aug. 15, 2008) (citing *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein,*

*P.C.,* 515 N.E.2d 891, 894, 25 Mass.App.Ct. 107, 111 (1987)).

Wolf Greenfield alleges that, in order to establish causation, Max–Planck will have to address substantial questions of patent law: "[I]n order to prove causation Max–Planck will need to prove that, had the Tuschl I patents been prosecuted by competent, conflict free counsel, Max–Planck would have received a 'strong' set of Tuschl II patents protecting the inventions it claims are solely owned by it." Def.'s Opp'n to Pl.'s Mot. for Remand at 6. Max–Planck argues that "for the purpose of determining whether Wolf Greenfield is engaged in the impermissible representation of joint clients that have conflicting interests, *it does not matter which client is right* with respect to any contentions concerning patent law issues." Pl.'s Mot. for Remand at 6.

Numerous courts have held that a legal malpractice complaint premised on an underlying patent prosecution necessarily requires the resolution of a substantial question of federal patent law. These opinions have reasoned that to resolve such cases, district courts must conduct a hypothetical "case within a case" to assess the value of the patent in the absence of the alleged malpractice. *See, e.g., Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, LLP,* 504 F.3d 1262, 1269 (Fed. Cir.2007) (patent infringement a necessary element of legal malpractice claim where plaintiff has to prove validity of patent to show that attorney's errors allowed infringers to raise defenses of invalidity and unenforceability of patent); *Immunocept, LLC v. Fulbright & Jaworski, LLP,* 504 F.3d 1281, 1285–86 (Fed.Cir.2007) (allegation that law firm made a drafting error during patent prosecution which narrowed the scope of patent gave rise to federal question jurisdiction because plaintiff could not prevail without addressing the scope of

the patent claims); *LaBelle v. McGonagle,* 2008 WL 3842998 (D.Mass.2008) (holding that, in order to state a claim for legal malpractice, the client must show, among other things, that it incurred a loss and that the attorney's negligence was a proximate cause of that loss); *Byrne v. Wood, Herron & Evans, LLP,* 2008 WL 3833699 (E.D.Ky.2008) (finding federal question jurisdiction where court must determine whether alleged errors in patent prosecution giving rise to legal malpractice claim resulted in plaintiff's loss of his potential royalties and licensing fees).

Max–Planck argues that by engaging in an impermissible conflict of interest, Wolf Greenfield's actions may prevent Max–Plancks' patents on the Tuschl II inventions from issuing. It does not limit itself solely to seeking legal fees associated with getting new counsel. In order to prove economic damage resulting from legal malpractice under Massachusetts law, Max–Planck will have to show that Wolf Greenfield's conflict of interest in the prosecution of the Tuschl I applications proximately caused the PTO to reject in whole, or in part, patent claims sought by Max–Planck. In other words, it must show that if Wolf Greenfield were conflict-free, the Tuschl II patent claims would be stronger. Because there is no final office action, the Court does not have a complete record to determine exactly what factual and legal issues Max–Planck will have to address to prove the causation element of a legal malpractice claim asserting economic damage. Still, the record of the preliminary injunction hearing gives the Court a vivid sneak preview. To prevail on a legal malpractice claim, Max–Planck will necessarily have to prove that but for the conflict of interest, which allegedly resulted in the refusal to excise the "3′ overhangs and mammalian data" from the Tuschl I applications, the Tuschl II applications would not have been rejected by the USPTO on "obviousness-

type double patenting" grounds. *See Max–Planck–Gesellschaft Zur Forderung Der Wissenschaften E.V. v. Whitehead Inst. for Biomedical Research,* 650 F.Supp.2d at 119–21 (D.Mass.2009). Wolf Greenfield also argues that other substantial patent questions are involved, i.e., whether its refusal to delete this data was justified because the data was necessary to meet the "best mode" requirement; whether prior art would have invalidated the patent claims; and whether the claims in Tuschl I and II were drafted too broadly.

This Court finds that such questions of patent law are both substantial and necessary to the resolution of this case, and therefore, under *Christianson,* this Court has exclusive jurisdiction over this case under 28 U.S.C. § 1338(a).

### 3. *Declaratory Judgment* [2]

Although the Court finds that removal was appropriate under § 1338(a) because of the legal malpractice claim, that analysis only applies to Max–Planck's request for money damages, which necessitates an analysis of the "causation" element. In addition to its claims for legal malpractice and breach of fiduciary duty, though, Max Planck requests in its Complaint that the Court enter "a judgment declaring, among other things, that Wolf Greenfield is required to cease its prosecution of the Tuschl I patent applications and withdraw its representation as to the co-owners." Compl. ¶ 25. Standing alone, the request for declaratory judgment would be remanded to state court because there is no federal preemption in the area of ethical rules for patent prosecution before the USPTO. *See, supra* Part III(1). As argued by Plaintiff, a court would not necessarily have to determine a substantial

question of patent law to determine whether there is a conflict of interest or an attorney-client relationship. Therefore, if a demand for money damages were not involved, this Court would remand the remaining declaratory judgment claim to the Massachusetts Superior Court.

### ORDER

The motion for remand [Docket No. 3] is **DENIED.**

---

**2.** It is unnecessary to discuss Max–Planck's claim for breach of fiduciary duty, as the Court can exercise supplemental jurisdiction over other claims.