[No. H033285. Sixth Dist. Mar. 29, 2010.]

LANDMARK SCREENS, LLC, Plaintiff and Appellant, v.
MORGAN, LEWIS & BOCKIUS, LLP, et al., Defendants and Respondents.

## COUNSEL

Rosen, Bien & Galvan, Sanford Jay Rosen, Sarah Zimmerman, Lisa Ells, Michael W. Bien; Haynes and Boone, Clark S. Stone, Steven M. Levitan and Jason M. Gonder for Plaintiff and Appellant.

Keker & Van Nest, Elliot R. Peters, Wendy J. Thurm and Steven A. Hirsch for Defendants and Respondents.

## OPINION

**ELIA, J.**—Landmark Screens, LLC (Landmark), appeals from a judgment of dismissal following the sustaining of a demurrer in favor of respondents Thomas Kohler and his law firm, Morgan, Lewis & Bockius, LLP. Landmark contends that its complaint for legal malpractice in patent prosecution raised no substantial issue of federal patent law and the superior court therefore erred in ruling that it lacked subject matter jurisdiction. We agree with the lower court's ruling on the facts presented and must therefore affirm the judgment.

### Background

Because this appeal arises from the sustaining of a demurrer, we summarize the underlying facts as they are stated in the operative pleading, the first amended complaint. "Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. Accordingly, we assume that the complaint's properly pleaded material allegations are true and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) Our summary further includes judicially noticeable facts contained in the record.

Landmark developed an "electronic billboard," a two-sided, electronically controlled, highly visible, outdoor light-emitting diode (LED) display. It began operating the billboard in December 2000 along Highway 101 in San Carlos. In November 2000 Landmark retained Thomas Kohler, then a partner in the Pennie & Edmonds law firm, to pursue patent protection for its invention. Kohler filed a patent application on January 9, 2002, with the United States Patent and Trademark Office (PTO). This application, referred to by the abbreviated number '096, included 72 claims pertaining to different aspects of the billboard. In May 2003, however, the PTO restricted the application, leading Kohler to pursue only claims 26–31 and claims 56–72. The remaining claims he canceled and refiled on August 13, 2003, as a divisional application, which Landmark calls the '916 application.

The divisional application was incomplete, however. Kohler failed to include a copy of the specifications and drawings, submitted an obsolete transmittal letter that failed to contain a statement incorporating by reference the specifications and drawings filed with the '096 application, and failed to utilize a "postcard receipt" method by which the PTO could have notified Kohler of the missing portions of the application.

On October 28, 2003, the '096 application was issued as United States Patent No. 6,639,574 (the '574 patent). Because the divisional application was incomplete, however, it could not claim the same January 9, 2002 filing date. Consequently, Landmark alleged, "to the extent any of the subject matter claimed in the '916 divisional application was in public use, sold or offered for sale, or disclosed in a printed publication greater than one year prior to the filing date of the '916 divisional application, including disclosure by the '574 patent, Landmark could now not obtain patent protection on such novel and valuable subject matter."

In February 2004 Kohler left Pennie & Edmonds and joined respondent Morgan, Lewis & Bockius, LLP (MLB). In June 2004 the PTO notified Kohler that the '916 application was incomplete. Kohler failed to disclose this development to Landmark. On August 23, 2004, he filed a petition in an effort to persuade the PTO to grant the divisional application the earlier filing date (Jan. 9, 2002) of the '574 patent.[1]

In its decision the PTO considered 37 Code of Federal Regulations part 1.183 (2009), which permits suspension of its filing rules in "an extraordinary situation, when justice requires." The PTO found no such circumstances and dismissed the petition in late 2004, based on "applicants' failure to exercise

---

[1] The PTO's response indicated that Kohler had requested a filing date of August 13, 2003—the date the divisional application was originally filed—not January 9, 2002.

due care, or lack of knowledge of, or failure to properly apply, the patent statutes or rules of practice." The divisional application was instead given a filing date of August 23, 2004, the date on which Kohler submitted the missing parts of the application.

According to the complaint, it was only in December 2004, after receiving the PTO's dismissal decision, that Landmark learned about the incomplete filing of the '916 divisional application and the subsequent petition. Between the June 2004 notification by the PTO and the December 2004 dismissal, Kohler and MLB engaged in a "deceptive course of action" by "actively conceal[ing] from Landmark" the negligent filing of the divisional application. Kohler and MLB continued to represent Landmark until November 2, 2005.

Landmark initiated this action on November 30, 2005, naming as defendants Pennie & Edmonds, MLB, and Kohler in his capacity as partner in each firm. In the first amended complaint, filed December 7, 2005, Landmark alleged legal malpractice, negligence, and breach of fiduciary duty. In the first and second causes of action, Landmark asserted that it had lost "valuable and pioneering patent rights" from defendants' failure to draft the patent claims properly, their failure to file a complete divisional application or correct its inadequacies, and their intentional or negligent failure to inform Landmark about the status of the divisional application. The third cause of action more generally asserted damages resulting from defendants' violation of Landmark's trust and confidence by "failing to properly and diligently perform legal services for Landmark and by intentionally concealing and failing to fully and properly inform Landmark of the status of the '916 divisional application and Defendants' Petition to the PTO."[2]

All of the defendants answered, but only Pennie & Edmonds raised subject matter jurisdiction as an affirmative defense. On September 26, 2006, the superior court granted the motion of Pennie & Edmonds and Kohler to compel arbitration pertaining to the work Kohler had performed while at Pennie & Edmonds. The court stayed the entire action until the conclusion of that proceeding, but it denied MLB's request for joinder in the motion to compel arbitration.

The case against Pennie & Edmonds and Kohler (in his prior capacity as partner there) was resolved by settlement and the stay was lifted on March

---

[2] In Landmark's answers to interrogatories it elaborated on its allegations, asserting that Kohler and MLB's failure to disclose or correct Kohler's errors and omissions caused "further damage to Landmark's patent rights." Landmark also complained of a false representation that it would not be charged for the work spent on the petition to the PTO and the failure to advise Landmark about steps it could take to mitigate the harm already caused.

17, 2008. On April 28, 2008, MLB and Kohler (as an MLB partner) demurred to all three causes of action, asserting lack of subject matter jurisdiction, and sought a protective order staying discovery. In opposition Landmark contended that the demurrer was untimely and that it was without merit, as the superior court had jurisdiction to decide the issues pertaining to MLB and Kohler's conduct. The superior court disagreed, however, overruling Landmark's untimeliness objection and sustaining the demurrer for lack of subject matter jurisdiction. The court accordingly entered judgment for Kohler and MLB on June 18, 2008. It is from that judgment that Landmark appeals.

On May 21, 2008, the day the demurrer order was entered, Landmark initiated an action against Kohler and MLB in the federal district court for Northern California. This complaint contained the same three causes of action as in the state court lawsuit but added claims of breach of contract and fraud. With respect to the first four, however, the district court granted respondents' motion to dismiss, with leave to amend to allege equitable estoppel. The court ruled that the statute of limitations, Code of Civil Procedure section 340.6, barred these claims and that Landmark had not been under a legal disability such that the statutory period would have been tolled. In particular, the court stated, the defense challenge to the state court's subject matter jurisdiction was not unforeseeable under the law existing before 2005. "Indeed, Plaintiff's claim for malpractice in a patent prosecution necessarily requires a counterfactual analysis of whether a patent might have issued absent the alleged malpractice, and what rights it would have conferred. In short, Plaintiff was on notice of potential infirmities in the Superior Court's jurisdiction." The court permitted amendment of the entire fraud claim as well as the estoppel theory of the other claims.

In January 2009 the district court dismissed the nonfraud causes of action in Landmark's second amended complaint. The court rejected the revised assertions of equitable estoppel and dismissed the malpractice claims as untimely. It declined, however, to dismiss the pleading of fraudulent concealment in the second amended complaint.

*Discussion*

1. *Standard and Scope of Review*

A demurrer is properly sustained when the complaint "does not state facts sufficient to constitute a cause of action," or where the court "has no jurisdiction of the subject of the cause of action alleged in the pleading." (Code Civ. Proc., § 430.10, subds. (e), (a).) "On appeal from a dismissal following the sustaining of a demurrer, this court reviews the complaint

de novo to determine whether it alleges facts stating a cause of action under any legal theory. [Citation.] . . . [¶] Because the function of a demurrer is not to test the truth or accuracy of the facts alleged in the complaint, we assume the truth of all properly pleaded factual allegations. [Citation.] Whether the plaintiff will be able to prove these allegations is not relevant; our focus is on the *legal* sufficiency of the complaint. [Citations.] [¶] The plaintiff bears the burden of demonstrating error by the superior court. [Citation.] Our only task is to determine whether the complaint states a cause of action as a matter of law. [Citations.] To show entitlement to reversal the plaintiff must show that the complaint alleged facts sufficient to establish every element of each cause of action. If the plaintiff failed to plead, or if the defendants negated, any essential element of a particular cause of action, this court should uphold the sustaining of the demurrer[]." (*Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 203 [80 Cal.Rptr.3d 340].)

### 2. *Subject Matter Jurisdiction*

■ The viability of Landmark's action depends on an application of 28 United States Code section 1338 (hereafter section 1338), which grants exclusive jurisdiction to federal courts in patent cases.[3] The scope of this authority was set forth by the United States Supreme Court in *Christianson v. Colt Industries Operating Corp.* (1988) 486 U.S. 800 [100 L.Ed.2d 811, 108 S.Ct. 2166] and subsequently refined in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.* (2005) 545 U.S. 308 [162 L.Ed.2d 257, 125 S.Ct. 2363]. Accordingly, section 1338 jurisdiction is proper only when "a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." (*Christianson, supra,* 486 U.S. at p. 809.) "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." (*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., supra,* 545 U.S. at p. 314.) ■ Worth further noting is "an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." (*Franchise Tax Bd. v. Laborers Vacation Trust* (1983) 463 U.S. 1, 22 [77 L.Ed.2d 420, 103 S.Ct. 2841].)

Respondents Kohler and MLB have not suggested that Landmark's action arises out of *federal patent law;* unquestionably legal malpractice is a state

---

[3] Title 28, section 1338, of the United States Code provides in relevant part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases."

law claim. The focus of respondents' opposition is instead on the second prong of the *Christianson* test, as they maintain that the issues cannot be decided without addressing a substantial question of federal patent law.

Respondents rely on two federal appellate cases, *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.* (Fed.Cir. 2007) 504 F.3d 1262 (*AMT*) and *Immunocept, LLC v. Fulbright & Jaworski, LLP* (Fed.Cir. 2007) 504 F.3d 1281 (*Immunocept*). Landmark, however, urges us to disregard those federal cases and instead follow the result we reached in *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115 [61 Cal.Rptr.3d 221]. We agree with respondents that federal court is the proper forum for this lawsuit.

Both *AMT* and *Immunocept* were legal malpractice cases. The action in *AMT* was filed in a Texas state court, alleging that the defendant attorney had made several errors in the course of patent prosecution and subsequent patent infringement litigation. According to the plaintiff AMT, those errors forced it to settle the patent infringement litigation for far less than fair market value because the underlying defendants had been able to raise plausible defenses of patent invalidity and unenforceability, which would not have been available but for the attorney's errors. (*AMT, supra,* 504 F.3d at p. 1266.) The defendant law firm removed the lawsuit to federal court, but the plaintiff moved to remand it to Texas. Three years later, they reversed positions, with two defendant law firms requesting remand, over the plaintiff's opposition.

Applying section 1338, the district court denied the motion to remand, and the Federal Circuit Court of Appeals affirmed. Noting that Texas malpractice law would require the plaintiff to prove a "case within a case" in order to show proximate cause, the court concluded that the plaintiff would have had to establish that it would have prevailed in the earlier litigation but for the lawyer's negligence. (*AMT, supra,* 504 F.3d at p. 1269.) Accordingly, the merits of that patent infringement claim—a substantial question of federal patent law—would have to be adjudicated as a necessary element of the alleged malpractice. The court further acknowledged the concerns expressed in *Grable* in stating that "[t]here is a strong federal interest in the adjudication of patent infringement claims in federal court because patents are issued by a federal agency. The litigants will also benefit from federal judges who have experience in claim construction and infringement matters." (*Id.* at p. 1272.)

In *Immunocept,* the plaintiff company alleged that its attorney had inadequately drafted a patent claim, which narrowed the scope of the patent's protection and thus allowed competitors to copy the claimed methods without risk of infringement. (*Immunocept, supra,* 504 F.3d at p. 1284.) The court

held that because the drafting error was a necessary element of the malpractice cause of action, Immunocept could not prevail without addressing the "claim scope." (*Id.* at p. 1285.) And because "patent claim scope defines the scope of patent protection [citation], we surely consider claim scope to be a substantial question of patent law. As a determination of patent infringement serves as the basis of § 1338 jurisdiction over related state law claims, so does a determination of claim scope. After all, claim scope determination is the first step of a patent infringement analysis." (*Ibid.*) Accordingly, a substantial question of federal law was presented, thereby establishing section 1338 jurisdiction. This question "can be complex in that it may involve many claim construction doctrines," and its resolution called for uniformity among judges. (504 F.3d at p. 1285.) "Litigants will benefit from federal judges who are used to handling these complicated rules." (*Ibid.*)

Landmark maintains that *AMT* and *Immunocept* are "rogue" cases that evince "overreaching" by the federal circuit and are not binding on this court. Instead, it argues, we should follow our prior decision in *Linear Technology Corp. v. Applied Materials, Inc., supra,* 152 Cal.App.4th 115. In that case Linear Technology Corporation (Linear) sued equipment manufacturers that had sold it equipment that was later the source of a patent infringement suit by Texas Instruments, Inc. (TI), against Linear based on its use of the equipment. The focus of the contract claim was respondents' breach of a promise to indemnify Linear and hold it harmless from claims arising from its use of the equipment it had bought from respondents. This court held that Linear's action for breach of contract and related claims did not require adjudication of a substantial question of federal patent law. Determining whether the infringement of the process patents arose from Linear's use of equipment purchased from the respondents entailed "only factual questions—in particular, what was the nature of each patent and was there a causal connection between Linear's use of the processing equipment and its infringement of TI's patents. TI's focus on Linear's conduct (its manufacturing *process*) also is not controlling. That TI had not named other defendants shows only that TI was uninterested in which tools Linear had used in infringing its process patents; it simply wanted relief for the infringement itself. The subject of the present action is more closely focused on how that infringement came to pass—specifically, whether it arose from the use of respondents' products." (*Id.* at p. 127.)

Of the three decisions related above, *Immunocept* is the most comparable, as it concerns claims of malpractice in patent prosecution. That case is not an anomaly, even in the federal circuit, as Landmark suggests; indeed, the same court recently reaffirmed its view that a claim of legal malpractice resulting in patent invalidity was within the jurisdiction of the federal court, as it required analysis of the patent claim and a showing that but for the attorney's error in filing a patent application, the resulting patent would not have been held

invalid. (See *Touchcom, Inc. v. Bereskin & Parr* (Fed.Cir. 2009) 574 F.3d 1403; *Davis v. Brouse McDowell, L.P.A.* (Fed.Cir. 2010) 596 F.3d 1355; but see *Excelstor Technology, Inc. v. Papst Licensing GMBH & Co. KG* (Fed.Cir. 2008) 541 F.3d 1373 [state is proper forum for licensee's suit against licensor which collected multiple royalties for same patented product].) *Linear Technology* is of limited application in the case before us, as we are not concerned with indemnification of claims brought by a third party against the plaintiff, and there the plaintiff's damages did not require a determination of patent infringement, enforceability, validity, or even scope. Here, by contrast, the complaint alleged impairment of valuable patent rights through respondents' conduct.

*Lockwood v. Sheppard, Mullin, Richter & Hampton* (2009) 173 Cal.App.4th 675 [93 Cal.Rptr.3d 220] represents one example of this state's application of *AMT* and *Immunocept*. It was not a legal malpractice case, however. There the plaintiff inventor sued an attorney and his law firm for making false representations to the PTO in requesting reexamination of the plaintiff's patents. According to the plaintiff, the attorney knew that the PTO would rely on those representations in granting reexamination, resulting in a stay of the plaintiff's pending infringement lawsuits for years while the validity of the patents was redetermined. During that time the plaintiff was unable to enforce his patents and thus had to end his enforcement program and settle the infringement lawsuits. Addressing the jurisdictional issue raised by the plaintiff on appeal, the Second District, Division Four, held that the federal courts had exclusive subject matter jurisdiction over Lockwood's complaint. The court examined *AMT* and *Immunocept* and concluded that for Lockwood to prevail on any of his claims, he would have to prove that but for the misrepresentations the PTO would not have granted reexamination. That showing brought into play a substantial question of patent law, as the court would have to "put itself in the position of a 'reasonable' patent examiner." (*Id.* at p. 687.)

Landmark aptly points out, however, that in this case the dispute is not about the adequacy of the divisional application; the issue is only "whether Kohler and MLB committed attorney malpractice by engaging in concealment and a course of deceptive conduct surrounding the already-filed divisional application, denying Landmark its only chance to remedy the situation. That is a question the California courts are capable of deciding without special expertise in patent law and without deciding the scope, validity, and enforceability of actual federal patent rights."

■ Landmark's distinction is a valid one as far as it goes, but it does not resolve the question of subject matter jurisdiction presented here. In California a viable legal malpractice claim requires proof of "(1) the duty of

the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199 [108 Cal.Rptr.2d 471, 25 P.3d 670].) The third and fourth elements cannot be overlooked. (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1242 [135 Cal.Rptr.2d 629, 70 P.3d 1046].) Thus, in transactional as well as litigation malpractice actions, a plaintiff "must show that *but for* the alleged malpractice, it is more likely than not that the plaintiff would have obtained a more favorable result." (*Id.* at p. 1244.) "The purpose of this requirement, which has been in use for more than 120 years, is to safeguard against speculative and conjectural claims. [Citation.] It serves the essential purpose of ensuring that damages awarded for the attorney's malpractice actually have been caused by the malpractice." (*Id.* at p. 1241.)

■ Accordingly, the showing required of Landmark goes beyond the question of whether respondents' concealment and deception amounted to malpractice. To recover from respondents, Landmark would have to prove that but for their failure to disclose (or intentional concealment of) Kohler's negligence in filing the '916 divisional application, it would not have lost "valuable and pioneering patent rights."[4] Landmark even acknowledges that its success would derive from "demonstrating that Defendants' concealment closed the door on Landmark's opportunity to pursue patent rights for its pioneering invention."[5] The nature and extent of those patent rights present a substantial issue of federal patent law that is properly adjudicated in federal court.

Landmark nonetheless maintains that the cases supporting the superior court's dismissal—in particular, *AMT, Immunocept,* and, more recently, *Touchcom, Inc. v. Bereskin & Parr, supra,* 574 F.3d 1403—have departed from "longstanding principles" and have appropriately been criticized in subsequent decisions. Even the federal circuit, Landmark insists, has retreated from its earlier position. Examination of these recent decisions, however, reveals their distinguishing attributes. The basis of the holding in *Excelstor Technology, Inc. v. Papst Licensing GMBH & Co. KG, supra,* 541 F.3d 1373, for example, was that the defendant had collected two different royalties from

---

[4] Landmark's complaint also alleges that "had Defendants exercised proper care, skill and diligence in the foregoing matter, Landmark's valuable and pioneering divisional patent for the electronic billboard would have been afforded the benefit of the filing date of the application for the '574 patent, thus preserving and providing to Landmark valuable patent rights to the invention."

[5] The additional assertion that respondents' conduct can be shown to have "deprived Landmark of the ability to exploit its pending patent application through licensing" does not appear as a distinct allegation in the operative complaint.

the same patented product. Because "there is no federal cause of action for collecting royalties twice on the same goods," patent law was not an element of any wrongful conduct. (*Id.* at pp. 1376–1377.) *Singh v. Duane Morris LLP* (5th Cir. 2008) 538 F.3d 334 is also of limited assistance. In that malpractice action the Fifth Circuit rejected the analysis in *AMT* and found neither a substantial federal issue nor a sustained balance between federal and state judicial responsibilities. The federal issue was primarily one of fact (whether Singh could have presented sufficient evidence of secondary meaning in the prior suit), while federal law was "only tangentially relevant" and the federal interest weak. (*Id.* at p. 339.) But the *Singh* court emphasized that its holding concerned trademark law—not, as in *AMT*, patent law; it expressly declined to determine whether the federal interest would be sufficient to justify federal jurisdiction in a case involving patent issues. (*Id.* at p. 340.)

The two Nebraska cases cited by Landmark, *New Tek Mfg., Inc. v. Beehner* (2005) 270 Neb. 264 [702 N.W.2d 336] (*New Tek I*) and *New Tek Mfg., Inc. v. Beehner* (2008) 275 Neb. 951 [751 N.W.2d 135] (*New Tek II*) are also not helpful. Those decisions arose from a patent that the defendant law firm had allowed to expire. Although the plaintiff was eventually able to revive the patent by paying a late maintenance fee, the plaintiff was left unprotected during the expired period, thus allegedly allowing infringement by a competitor. The Nebraska Supreme Court identified the "precise question" as "whether, absent Beehner's negligence, New Tek would have been successful in an infringement action against [the competitor]." (*New Tek I, supra*, 702 N.W.2d at p. 346.) The court acknowledged that legal malpractice required a plaintiff to show that it would have prevailed in a patent infringement action against the competitor. But the court regarded this question as one of fact, which state courts could adjudicate. In *New Tek II*, decided after *AMT* and *Immunocept*, the court briefly acknowledged those federal cases and merely repeated its conclusion that it had subject matter jurisdiction over the malpractice claim. (751 N.W.2d at p. 144.)

■ We agree that a hypothetical or potential, as opposed to an actual, infringement may be dismissed as irrelevant to damages in the proper case; but if an infringement action was prevented by the attorney's negligence, then it seems to us that proof of damages would require not just evidence of facts but presentation of substantial patent law questions that the federal court is better equipped to address. "Determining causation always requires evaluation of hypothetical situations concerning what might have happened, but did not. In both litigation and transactional malpractice cases, the crucial causation inquiry is *what would have happened* if the defendant attorney had not been negligent. This is so because the very idea of causation necessarily involves comparing historical events to a hypothetical alternative." (*Viner v. Sweet, supra*, 30 Cal.4th at p. 1242.)

Consequently, to the extent that the scope of a patent claim or a loss caused by infringement is at issue, we decline to follow the Nebraska court in making the determination, even in the context of a state law cause of action. Merely because infringement may be a question of fact in a tort created under state law does not mean that it necessarily belongs in state court. We believe it was improper for the Nebraska court to intrude on federal jurisdiction by basing summary judgment on the conclusion that the evidence was insufficient to prove noninfringement. (*New Tek I, supra*, 702 N.W.2d at pp. 354–355 ["there was no evidence sufficient to support a finding that element 4, claim 22, of the '080 patent was not equivalent to the corresponding structure of the Orthman device, and no other evidence that would show that the Orthman device, as a matter of law, did not infringe on the '080 patent"]; see *Premier Networks, Inc. v. Stadheim and Grear, Ltd.* (2009) 395 Ill.App.3d 629 [335 Ill.Dec. 304, 918 N.E.2d 1117, 1123] [expressing disagreement with *New Tek I*]; *Rockwood Retaining Walls, Inc. v. Patterson, Thuente, Skaar & Christensen, P.A.* (D.Minn., Dec. 22, 2009, Civ. No. 09-2493 (DWF/FLN)) 2009 WL 5185770 [following *AMT*, not *New Tek*, where causation element of malpractice claim involved substantial federal issue of patent law]; see also *Tattletale Portable Alarm Systems, Inc. v. Calfee, Halter & Griswold, LLP* (Ohio App., Mar. 26, 2009, No. 08AP-693) 2009 WL 790314 [malpractice action based on failure to ensure payment of patent maintenance fees depended on substantial issue of federal patent law where attorney's negligence caused loss of patent and loss of lucrative contract].)

█ Landmark further argues that this case differs significantly from precedent supporting respondents' position, because here there is no issued patent. The existence of a patent, however, has not invariably been deemed necessary for a finding of a substantial question of federal patent law. In *Davis v. Brouse McDowell, L.P.A., supra*, 596 F.3d 1355, for example, the district court's exercise of jurisdiction was upheld where the plaintiff had to prove that she would have obtained patents but for her attorney's negligence in preparing and filing her applications. In *Max-Planck-Gesellschaft Zur Foerderung Der Wissenschaften E.V. v. Wolf Greenfield & Sacks, PC* (D.Mass. 2009) 661 F.Supp.2d 125, for example, a claim of legal malpractice in patent prosecution was within the federal court's jurisdiction where proof of economic damage required a showing that the attorney's conduct under a conflict of interest proximately caused the PTO to *reject* the plaintiff's patent claims. Similarly, in *LaBelle v. McGonagle* (D.Mass., Aug. 15, 2008, Civ. A. No. 07-12097-GAO) 2008 WL 3842998, page *4, footnote 3 a substantial federal question was shown where recovery of damages for failure to file a patent application required a showing that the application would have resulted in issuance of a patent "sufficiently broad for [the plaintiffs] to seek damages from infringers or to license the patent for royalties." And in *Chopra v. Townsend, Townsend and Crew LLP* (D.Colo., Feb. 13, 2008, Civ. A.

No. 07-CV-02447-MSK-MEH) 2008 WL 413944 a malpractice claim for abandoning patent applications was determined to be within federal jurisdiction as long as a dispute remained over the amount of damages, which was asserted to be the amount of the competitor's royalties, because plaintiff would have had to prove that if the application had been approved, then the competitor would have infringed the patent. Finally, in *Med Five v. Keith* (D.Hawaii, Feb. 25, 2008, Civ. No. 07-00389DAE-LEK) 2008 WL 564674, page *3 the plaintiffs sought remand to state court on the ground that their contract and tort claims, including legal malpractice, did not implicate federal law because "they [did] not have a patent and federal patent law does not create a cause of action based on pending or provisional patents." The district court rejected this position, finding a substantial federal question because the plaintiffs' claims were "premised upon an allegation akin to patent infringement." (*Id.* at p. *6; cf. *Gratsch v. University of Michigan Regents* (E.D.Mich., Jan. 30, 2009, No. 08-14765) 2009 WL 230544 [patent law issues only incidentally implicated in employment discrimination complaint].)[6]

We thus conclude that the superior court correctly ruled that this action should be adjudicated in federal court because of the substantial patent questions presented in the elements of causation and damages. We disagree with Landmark that on the precise facts before us, ceding jurisdiction to the federal court would upset the balance between federal and state judicial responsibilities. (*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., supra*, 545 U.S. at p. 314.)

We further find no viable avenue of relief through reliance on the prospect of alternative theories for recovery of damages. It is true that "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." (See *Christianson v. Colt Industries Operating Corp., supra*, 486 U.S. at p. 810.) In *Altavion, Inc. v. Konica-Minolta Systems Laboratory, Inc.* (N.D.Cal., May 8, 2008, No. C 07-06358 MHP) 2008 WL 2020593, on which Landmark relies, the federal district court was able to identify a theory related to its fraud claim that was unrelated to any question of patent law. Here, however, the complaint does not appear to lend itself to alternative theories that do not call for determination of a substantial federal issue, whether it is the prospect of licensing its invention or the vague suggestion of "its ability to fix Defendants' mistakes" before July 10, 2004. In either case the viability

---

[6] Although we may not rely on unpublished California cases, the California Rules of Court do not prohibit citation to unpublished federal cases, which may properly be cited as persuasive, although not binding, authority. (Cal. Rules of Court, rule 8.1115; *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18 [72 Cal.Rptr.3d 112, 175 P.3d 1170]; *Pacific Shore Funding v. Lozo* (2006) 138 Cal.App.4th 1342, 1352, fn. 6 [42 Cal.Rptr.3d 283].)

of the licensing opportunity or remediation of Kohler's "mistakes" would require substantive determination of issues that are properly resolved in federal court.

Landmark protests that affirmance of the judgment here would leave it without a remedy. We cannot provide relief from that predicament. As the district court noted in rejecting Landmark's claim of legal disability, at the time Landmark filed this action there was sufficient authority suggesting that federal court would be the proper forum for resolution of the issues raised. (See, e.g., *Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1426–1427 [13 Cal.Rptr.3d 766] [substantial patent law issues raised in allegations of unfair royalty charges, threatened patent infringement litigation, and baseless lawsuits].) Pennie & Edmonds alerted Landmark to the issue of subject matter jurisdiction in its answer, only two months after the first amended complaint was filed. Like the district court, we are not convinced that Landmark was deprived of its ability to file a timely action in federal court.

### Disposition

The judgment is affirmed.

Rushing, P. J., and Premo, J., concurred.

A petition for a rehearing was denied April 28, 2010, and appellant's petition for review by the Supreme Court was denied July 14, 2010, S182516. Werdegar, J., did not participate therein.