Filed 3/3/23  Birke v. Lowe's Home Centers, LLC CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN BIRKE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LOWE'S HOME CENTERS, LLC,<br>et al.,<br><br>    Defendants and Respondents. | B314138<br><br>Los Angeles County<br>Super. Ct. No.<br>20CHCV00510 |

APPEAL from an order and a judgment of dismissal of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge. Affirmed in part, reversed in part.

John Birke, in pro. per., for Plaintiff and Appellant.

Tharpe & Howell, Stephanie Forman and Eric B. Kunkel for Defendants and Respondents.

———————————

# INTRODUCTION

Plaintiff John Birke, an attorney representing himself, appeals from the trial court's order awarding almost $95,000 in sanctions under Code of Civil Procedure[1] section 128.7 to defendants Lowe's Home Centers, LLC (Lowe's) and Levi Renderos, a Lowe's store manager (collectively, defendants), and a judgment of dismissal after the trial court sustained defendants' demurrer to plaintiff's first amended complaint (FAC).

Plaintiff's lawsuit arose from an incident at a Lowe's store he visited in late June 2020 after California's public health department directed—in response to the COVID-19 pandemic—all people in the state to wear face coverings[2] while in an indoor public space.  He alleged an unmasked store customer spat in his face after plaintiff, who wore a mask, asked the shopper how he got into the store without wearing a mask and then tracked the maskless man's location through the store while trying to call the police on his phone.  Plaintiff alleged Lowe's employees did not intervene, call the police, or try to stop the spitter from leaving the store, despite plaintiff's entreaties that they do so.

Plaintiff's FAC alleged defendants committed fraud, created and maintained a public nuisance, and were grossly negligent based on their failure to require customers inside the store to wear masks and their lack of response to the incident.

---

[1]     Undesignated statutory references are to the Code of Civil Procedure unless otherwise stated.

[2]     We use the terms "face covering" and "mask" interchangeably.

Defendants demurred to the FAC and, in their motion for sanctions, contended the FAC was frivolous and had been filed for an improper purpose. The trial court sustained the demurrers, granted the sanctions motion, and dismissed the action.

We affirm the dismissal of plaintiff's FAC but reverse the order granting defendants' motion for sanctions. We also deny defendants' request for appellate sanctions.

## FACTS AND PROCEDURAL BACKGROUND

Consistent with the applicable standard of review, we draw our statement of facts from the allegations in the FAC and matters properly subject to judicial notice, including the initial complaint.[3] (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*); *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 240; *Continental Ins. Co. v. Lexington Ins. Co.* (1997) 55 Cal.App.4th 637, 646.) We treat as true " 'all material facts properly pleaded, but not contentions, deductions

---

[3] The trial court properly took judicial notice of plaintiff's original complaint and FAC; Governor Newsom's March 4, 2020 proclamation of a state of emergency in response to the COVID-19 pandemic and executive orders issued on March 12, March 19, and May 4, 2020; the June 18, 2020 California Department of Public Heath (CDPH) order for Guidance for the Use of Face Coverings (6/18/20 order); COVID-19 Industry Guidance (Retail) issued by the CDPH and Cal-OSHA on May 7, 2020 and reissued on July 29, 2020, as well as their COVID-19 checklist for retail employees issued on July 2, 2020; and Los Angeles City Council Ordinance No. 186809, passed November 4, 2020. (Evid. Code, §§ 451, subd. (f), 452, subds. (b)–(d) & (f), 453.)

or conclusions of fact or law.' " (*Blank*, at p. 318.)  We discuss the facts relating to the sanctions motion separately below.

1.      ***Allegations relating to the incident at Lowe's***

On June 18, 2020, a few months after Governor Newsom proclaimed a state of emergency in response to the COVID-19 pandemic, the Governor issued an emergency executive order requiring everyone in California to wear a mask or face covering while indoors in any place of business open to the public.

Ten days later, on June 28, 2020, plaintiff visited a Lowe's store in West Hills.  He was wearing a mask.  In his FAC, plaintiff alleged that, when he entered the store, there were no signs outside advising shoppers that masks and social distancing were required, nor an employee or security guard at the door refusing entry to customers not donning masks.

About three to five minutes after he entered the store, plaintiff saw a male customer who was not wearing a mask. From about 40 feet away, plaintiff asked the man "how he got into the [s]tore without a mask."  When the man responded as if he didn't understand the question, plaintiff allegedly told him California law required him to wear a mask inside the store. The man responded, " 'Fuck off, go do your fucking business,' " took out his cell phone, and began recording plaintiff while shouting at him.

Plaintiff's initial complaint alleged that, after the man cursed at him, plaintiff replied, " 'You're violating California law,' " and told the man he was going to tell an employee. In response, the man told plaintiff to " 'fucking stop bothering [him],' " before taking out his cell phone apparently to record plaintiff.

Plaintiff alleged he "retreated" down the next aisle to tell Lowe's employees a "man was maskless and moving about the [s]tore." He asked two employees to tell the man "to comply with the law." They ignored plaintiff and "refused to speak further to" him.

Plaintiff originally alleged that, at this point, the maskless shopper was "walking all around the store, playing a cat and mouse game" with him. While "keeping an eye on the man's location from a distance," plaintiff called 911 on his cell phone. Plaintiff's FAC, on the other hand, alleged plaintiff—"left [with] no other recourse" because he had not yet found the item he wanted—told the man he was calling the police, while "trying to track the man's location from a safe distance as the man moved about the [s]tore."

Upon "seeing" plaintiff on his cell phone, the man allegedly "approached to within 2 feet" of plaintiff and "spat" in his face "four times in rapid succession." The man then turned to an employee, who had been standing about 15 feet away, and said, " 'This guy's bothering me because I don't have a mask,' to which the employee responded, 'Well you just spit in his face.' " Plaintiff asked that employee to call someone, but the employee did not respond or do anything.

Plaintiff continued to "tr[y] to monitor the attacker's location" within the store as he attempted "to engage any employee about the attack." Plaintiff alleged he was "ignored," and "[e]very employee refused to intervene or call a manager or the police." No one asked plaintiff if he was "all right."

After "several minutes," the man headed toward the store's front exit, stopping to tell customers and employees—"loudly"— that plaintiff was " 'bothering' him because he was not wearing

5

a mask."  Apparently, someone gave the man a mask, which he put on before walking through the store again.  Plaintiff continued to "implore employees to call the police."

The man allegedly "confronted" plaintiff "threateningly" in an aisle.  Plaintiff backed up and then "stood his ground," as the man approached to within a few feet of him.  As an employee with a name tag "Oscar" approached the two men, plaintiff asked him to call the police because the maskless man was "threatening him again and had spat in his face."  Oscar told plaintiff, " 'We're not allowed to call the police,' and walked away, saying, 'You guys need to move away from each other.' "  After "[s]everal minutes," the man left the store.  Plaintiff found Oscar and again asked him to call the police because "a crime had been committed against [plaintiff] in the [s]tore."  Oscar "refused" to do so.

Oscar allegedly told plaintiff he "needed to leave the store" and "refused" to call the store manager Renderos.  On information and belief, plaintiff alleged Oscar was "carrying out" Renderos's "order" not to let plaintiff speak to him.  Plaintiff waited "in vain" for police and then left to make a report at a nearby police station, but it was closed.

Plaintiff returned to the store and, after he waited for "several more minutes in the customer service line," Renderos came out to talk to him.  Plaintiff told him the details about what had happened.  Renderos did not write down or record plaintiff's statement nor give plaintiff "any information about reporting the attack to the corporate office."

Plaintiff feared he would contract the COVID-19 virus as a result of the incident, but he did not.

### 2. *Allegations relating to false advertising*

The FAC alleged Lowe's advertised to the public, through June 28, 2020, " '[O]ur customers' health is our priority during the COVID-19 virus.' "  Plaintiff allegedly heard this representation in radio advertisements before his visit.  He alleged he would not have entered the store had he not heard those advertisements, or if he thought he would encounter customers not wearing masks.

After plaintiff entered the store, he heard a recording stating Lowe's' priority was the health of its customers.  Plaintiff "understood" the message to refer to the COVID-19 pandemic and measures Lowe's was taking to protect its customers and employees from exposure to COVID-19.  Plaintiff alleged he "entered and remained" in the store in reasonable reliance on Lowe's representations, and "on the ensuing belief that the [s]tore was at least complying with the [6/18/20] Order."

Plaintiff alleged Lowe's' representations were false based on his encounter with the maskless man and on Lowe's' and its employees' conduct in response to the incident.  Plaintiff alleged Lowe's "violat[ed] the June 18, 2020[ ] Emergency Order" and "sid[ed] with maskless shoppers against customers with masks that objected."  Plaintiff alleged Lowe's and its employees "allow[ed]" the unmasked man "to commit a possibly lethal battery" against him.

As to Renderos specifically, plaintiff alleged on information and belief that he was the "store manager on duty" at the time of the alleged events and was aware "of the attacker's presence in the [s]tore" and the "attack" on plaintiff.

7

### 3. *Plaintiff's original lawsuit*

On July 16, 2020—a little over two weeks after the incident—plaintiff sued Lowe's for fraud (intentional misrepresentation) and public nuisance. He named its Chief Executive Officer Marvin R. Ellison as a defendant a month later. (In his FAC, plaintiff alleged Ellison announced on July 17, 2020, after becoming aware of plaintiff's lawsuit, that Lowe's would require all employees and customers to wear face coverings in its stores, nationwide.)

In his claim for fraud, plaintiff alleged he relied on representations by Lowe's that it complied with recommendations for protecting customers from COVID-19 and prioritized its customers' health and safety. In his claim for public nuisance, plaintiff alleged Lowe's created and maintained a public nuisance on its premises by allowing customers to enter without wearing a mask. Plaintiff sought $20,000,000 in compensatory damages, an award of punitive damages, and an injunction.

Lowe's removed the action to federal court on August 18, 2020, on diversity grounds based on Lowe's' and Ellison's North Carolina citizenship. Plaintiff then dismissed the case.

### 4. *The current action*

On September 1, 2020, plaintiff filed a new complaint in the superior court, alleging the same claims as he had before plus a third claim for negligence per se. He also added Levi Renderos as a defendant. Plaintiff's new negligence claim alleged defendants violated the 6/18/20 order and the City of Los Angeles's mask ordinance, issued May 13, 2020, by inviting shoppers to patronize the store regardless of whether they wore a mask, and defendants' violation of these public health laws was a substantial factor leading to plaintiff's harm from the maskless

8

shopper who spat in his face, "dramatically increasing" his and the public's risk of contracting, and spreading to others, the COVID-19 virus.  Plaintiff sought the same relief as in the original action.

On October 9, 2020, Lowe's again removed the complaint to federal court on diversity grounds, asserting that Renderos, a California resident, was a sham defendant.

Plaintiff moved to remand.  The district court granted plaintiff's motion, explaining that for purposes of fraudulent joinder, "a claim is valid if there is any possibility that state law might impose liability on a resident defendant under the circumstances alleged in the complaint or in a future amended complaint."  Applying this standard to plaintiff's complaint, the court stated "there exists at least a possibility that state law imposes liability on Defendant Renderos for negligence under the circumstances alleged in the complaint or in a future amended complaint," and Renderos thus was not a sham defendant.

After the case was remanded to the superior court, defendants demurred to the complaint on December 16, 2020, setting the hearing for March 12, 2021.[4]  Before the demurrers could be heard, on March 2, 2021, plaintiff filed his FAC.  For the most part, the FAC substantively was the same as the complaint.[5]  Plaintiff repleaded the prior negligence per se claim

---

[4]    The superior court also granted Ellison's motion to quash service of summons and dismissed him from the action.  Plaintiff does not challenge that ruling on appeal.

[5]    Instead of $20,000,000 in damages, however, plaintiff asked for no less than $250,000.

9

as a claim for gross negligence/recklessness. He alleged that, in violating the 6/18/20 order, defendants breached the duty of reasonable care they owed plaintiff "as a licensee or invitee" of the store, and he was one of the class of persons the 6/18/20 order and local COVID-19 orders were designed to protect. Plaintiff alleged all three causes of action—fraud, public nuisance, and negligence—against both Lowe's and Renderos.[6]

A week later, on March 10, 2021, plaintiff substituted himself in pro. per. for his counsel (Michael Sohigian). Defendants served plaintiff with a motion for monetary and other appropriate sanctions under section 128.7 by overnight delivery and email on March 12, 2021. They then demurred to, and moved to strike portions of, the FAC on March 30, 2021. After plaintiff did not withdraw the FAC, defendants filed their motion for sanctions on April 7, 2021.

## 5. *Hearing on demurrers and motion for sanctions*

On June 18, 2021, after continuances, the court heard defendants' separate demurrers and joint motion to strike (Renderos also filed a joinder in Lowe's' demurrer), as well as defendants' motion for sanctions. Plaintiff and defendants' counsel appeared remotely by video. Although the court had posted its tentative rulings in favor of defendants that morning, neither plaintiff nor defendants' counsel had seen them. The court thus gave the parties time to review the rulings and present argument.

---

[6] On May 10, 2021, plaintiff dismissed Renderos, without prejudice, from his fraud cause of action.

Defendants submitted.  The court's minute order states, "Plaintiff declines to review the Court's tentative rulings. No further arguments are presented."  Accordingly, the court adopted its tentative rulings as its final rulings, sustained the demurrers without leave to amend, and granted defendants' motion for sanctions, awarding them $94,704.33.  (The motion to strike became moot.)  There is no reporter's transcript.

In sustaining the demurrers, the court found the 6/18/20 order imposed no duty on Lowe's to require its customers to wear face masks, and all of plaintiff's claims related to defendants' "alleged failure to enforce (i.e., require/force customers in their store to wear face coverings) the Emergency Executive Order issued in California on 6/18/20."

In the alternative, the court found that, even if the order imposed a duty on Lowe's to require its customers to wear face coverings, Lowe's would be immune from liability for failing to enforce the order under the California Emergency Services Act (CESA) (Gov. Code, § 8550 et seq.).

The court then found each of plaintiff's causes of action failed for additional reasons, and plaintiff could not allege facts to cure their defects.

As for defendants' motion for sanctions, the court found the claims in plaintiff's FAC were legally and factually frivolous under section 128.7, subdivision (b)(2)–(3), and filed for an improper purpose under subdivision (b)(1).  The court awarded defendants their attorney fees and costs, totaling $94,704.33. Plaintiff appealed.

11

## DISCUSSION

### 1. *The court did not err in sustaining the demurrers to the FAC without leave to amend*

#### a. *Standards of review*

"We review a judgment of dismissal after an order sustaining a demurrer de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law." (*Hanouchian v. Steele* (2020) 51 Cal.App.5th 99, 106.) In so doing, we accept as true " 'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank, supra*, 39 Cal.3d at p. 318.) "We also accept as true all materials properly 'subject to judicial notice,' and disregard any allegations in the operative complaint that those judicially noticed facts contradict or negate." (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1335.) We also "give the complaint a reasonable interpretation, and read it in context." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)[7]

We also "must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect,

---

[7] Plaintiff contends the trial court failed to adhere to these principles by, among other things, drawing inferences in defendants', rather than plaintiff's, favor and deciding questions of fact. As we independently determine whether plaintiff's FAC states a cause of action, applying the above principles, we need not individually address here each inference plaintiff argues the court should or should not have made or each fact plaintiff contends the trial court decided.

12

we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.  [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect.  [Citation.]" (*Schifando*, *supra*, 31 Cal.4th at p. 1081.)

Finally, " 'we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself.  [Citations.]' [Citation.]" (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 958.)  Accordingly, we will affirm the " 'trial court's decision to sustain the demurrer [if it] was correct on any theory.  [Citation.]' [Citation.]" (*Ibid.*)

> b. *At the time of the incident, Lowe's did not owe plaintiff a duty to ensure its customers abided by the 6/18/20 order*

As the trial court noted, all of plaintiff's claims arise from defendants' "alleged failure to enforce (i.e., require/force customers in their store to wear face coverings)" the 6/18/20 order.  Plaintiff referred to and relied on the 6/18/20 order throughout the FAC's general allegations, all of which were incorporated into the allegations about each specific cause of action.[8]  For example:

- Plaintiff told the maskless man that "California law required him to wear a mask inside" the Lowe's store,

---

[8]    For that matter, the allegations specific to the fraud cause of action also were incorporated into the causes of action for public nuisance and negligence, and the allegations specific to the public nuisance cause of action were incorporated into the cause of action for gross negligence/recklessness.

and his initial complaint quoted himself as telling the man, " 'You have to have a mask on in here.' "

- Plaintiff asked Lowe's employees to tell the maskless man to "comply with the law."
- Defendants were "violating the June 18, 2020 . . . Order" and "actively siding with maskless shoppers against customers with masks [who] objected."
- Plaintiff "reasonabl[y] expect[ed] that Defendants at least complied with California law as an operating retail store in California."
- Defendants "inflicted" injuries on plaintiff and "thousands, if not tens of thousands, of people" by "flouting California health directives."

Each specific cause of action also was based on allegations relating to the 6/18/20 order. For example:

- As to fraud, plaintiff alleged he believed Lowe's' representations about " 'our customers' health is our priority during the COVID-19 virus' " meant the store "was at least complying with the [6/18/20] Order"; and Defendants "concealed the fact[ ] . . . [t]hey would take no steps to protect customers from potentially infected shoppers not wearing face coverings." (Italics omitted.)
- As to public nuisance, plaintiff alleged defendants "operated, managed and maintained a retail store that patently violated not just the [6/18/20] Order, but what even in June 2020 were months old CDC and local pandemic control guidelines."

14

- As to negligence, plaintiff alleged that "[i]n violating the [6/18/20] Order, . . . Defendants breached a duty of reasonable care" they owed plaintiff.

The court properly took judicial notice of the content of the 6/18/20 order "as an official act of the executive department of any state of the United States."[9] (Evid. Code, § 452, subd. (c); see also Evid. Code, § 453.) The 6/18/20 order expressly states, "People in California must wear face coverings when they are . . . [i]nside of, or in line to enter, any indoor public space." "The following individuals are exempt from wearing a face covering: . . . [p]ersons with a medical condition, mental health condition, or disability that prevents wearing a face covering."

To be sure, the 6/18/20 order required all individuals to wear a face covering inside stores, unless exempt. If he wasn't

---

[9] Plaintiff, and the trial court, referred to the 6/18/20 order as an "Emergency Executive Order" issued by the Governor. On March 4, 2020, Governor Newsom proclaimed a state of emergency due to the COVID-19 pandemic. The Governor then issued the following Executive Orders on March 12, March 19, and May 4, 2020, respectively: Executive Order No. N-25-20 that ordered "[a]ll residents . . . to heed any orders and guidance of state and local public health officials"; Executive Order No. N-33-20 that "directed" all residents "to immediately heed the current State public health directives"; and Executive Order No. N-60-20 that "directed" all residents "to continue to obey State public health directives," and authorized "the State Public Health Officer to take any action she deems necessary to protect public health." CDPH's June 18, 2020 "Guidance for the Use of Face Coverings" thus was an order, guidance, and/or directive of the CDPH authorized by the Governor and subject to the Executive Orders directing residents to comply with it.

exempt, the unmasked man should have been wearing one. Nevertheless, nothing in the express language of the order requires business proprietors to enforce it against their patrons or customers. Thus, as the trial court explained, based on its "plain language," the 6/18/20 order "did not impose a duty on Lowe's . . . to require its customers to wear face masks."

All of plaintiff's causes of action therefore fail to the extent they are based on the presumption that defendants "violated" the 6/18/20 order by not enforcing it against their customers, or had a duty to ensure their customers complied with the order.

Because we conclude the 6/18/20 order did not impose a duty on defendants to make shoppers put on masks,[10] we need not address whether Lowe's was immune from liability for failing to enforce the order under CESA. To the extent plaintiff's causes of action are based on other facts, they also fail, as we discuss below.[11]

---

[10] We do not opine on whether Lowe's, or any other business, was required to bar unmasked customers from entering their stores, or to ensure customers wore masks while inside their stores *after* June 28, 2020. The rules, regulations, and mandates governing mask wearing and other measures to prevent the spread of the COVID-19 virus evolved throughout the pandemic.

[11] Our analysis of plaintiff's claims applies to both Lowe's and Renderos. To the extent a claim fails as to Lowe's it also fails as to Renderos, as Renderos's alleged negligence and participation in the alleged public nuisance occurred while he was acting for Lowe's.

16

c. *Plaintiff otherwise has failed to state a cognizable claim for negligence*

i. Duty

"To establish a cause of action for negligence, a plaintiff must allege facts showing a legal duty to use due care, breach of the duty, causation, and damages. [Citation.] Duty is a threshold issue, a question of law for the court, and reviewed de novo on appeal. [Citation.] Every person has a duty in his or her activities to exercise reasonable care for the safety of others. (Civ. Code, § 1714, subd. (a).)" (*Colonial Van & Storage, Inc. v. Superior Court* (2022) 76 Cal.App.5th 487, 496.)

As we discussed, the 6/18/20 order did not impose a duty on Lowe's or Renderos to require or force customers in the store to wear face coverings. Plaintiff alleged defendants "violat[ed]" the 6/18/20 order and thus "breached a duty of reasonable care" they owed to plaintiff, as a "licensee or invitee" of the store on June 28, 2020. Plaintiff's cause of action for gross negligence/recklessness based on this ground thus fails as a matter of law.

Plaintiff nevertheless argues his claim for negligence also is based on defendants' duty to keep him safe while on their premises—i.e., prevent the spitting incident—and a reasonable juror could find defendants breached that duty when they did nothing about the incident. The FAC alleged that, in addition to violating the 6/18/20 order, defendants' "acts and omissions precipitating the attack, during the attack, and after the attack" breached a duty of reasonable care they owed plaintiff. We thus consider whether these allegations state a claim for negligence.

"A defendant may owe an affirmative duty to protect another from the conduct of third parties, or to assist another who has been attacked by third parties, if he or she has a 'special

17

relationship' with the other person." (*Morris v. De La Torre* (2005) 36 Cal.4th 260, 269 (*Morris*), cited by plaintiff.) Such a special relationship exists between business proprietors, such as Lowe's, and their patrons or invitees, like plaintiff. (*Ibid.*)

"[A]lthough a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205; *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 229 (*Delgado*), relied on by plaintiff [business proprietors "owe a duty to their patrons to maintain their premises in a reasonably safe condition"].) That duty "includes an obligation to undertake 'reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures.' " (*Delgado*, at p. 229.) Plaintiff argues that, as a patron at the Lowe's store, he "had a recognized right to . . . precautionary measures, e.g., posting a security guard outside, responding to [his] requests to speak to the violator, [and] calling the police or manager that could have prevented the attack on him."

Lowe's does not dispute it owed a duty to maintain the safety of its premises, including to "guard against foreseeable acts by third parties." Thus, we "must consult the factors described in *Rowland* [*v. Christian* (1968) 69 Cal.2d 108 (*Rowland*)] to determine whether relevant policy considerations counsel limiting that duty."[12] (*Brown v. U.S.A. Taekwondo*

---

[12] The *Rowland* factors include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's

18

(2021) 11 Cal.5th 204, 209 (*Brown*) [articulating "two-step inquiry" to determine if "a defendant has a legal duty to take action to protect the plaintiff from injuries caused by a third party":  the court first determines whether an affirmative duty to protect exists and then "consult[s]" the *Rowland* factors].)

" 'The most important' " of the *Rowland* factors " 'is whether the injury in question was *foreseeable*.' "  (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 629.)  "In examining foreseeability, 'the court's task . . . "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed." ' "  (*Ibid.* [framing question not as to whether university could predict specifics of attack but "whether a reasonable university could foresee that its negligent failure to control a potentially violent student, or to warn students who were foreseeable targets of his ire, could result in harm to one of those students," and concluding it could], quoting *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 772.)  Moreover, " '[f]oreseeability, when analyzed to determine

conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."  (*Rowland, supra*, 69 Cal.2d at p. 113.)

the existence or scope of a duty, is a question of law to be decided by the court.' " (*Delgado, supra*, 36 Cal.4th at p. 237.)

Here, plaintiff asserts his negligence claim is based on defendants' negligence in having "invited" persons violating the 6/18/20 order—i.e., unmasked customers—into the Lowe's store. Even if defendants had a general duty to require customers to wear masks—or to communicate with them that they should[13]—

---

[13] For the first time in his reply brief, plaintiff argued defendants violated Cal-OSHA rules in effect at the time, thus "establish[ing] a rebuttable presumption of negligence." Although the trial court, on defendants' motion, took judicial notice of the May 7, 2020 Cal-OSHA guidance containing those rules, plaintiff never made this argument below. (See *Hanna v. Mercedes–Benz USA, LLC* (2019) 36 Cal.App.5th 493, 513 [" ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal.' " "]; see also *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 573, fn. 18 ["An appellant cannot salvage a forfeited argument by belatedly addressing the argument in its reply brief."].) In any event, amending the FAC to refer to the Cal-OSHA guidance would be futile. First, the guidance does not require retailers to ensure customers wear masks, as plaintiff suggested at oral argument. The guidance states "[k]ey prevention practices include . . . use of face coverings by employees . . . and customers/clients." The guidance also provides, "Retailers must take reasonable measures to communicate with the public that they should use face coverings." As we discuss, because defendants' failure to comply with any duty to advise customers to wear masks is not, as a matter of law, "sufficiently likely to result in" an unmasked customer attacking another customer, the *Rowland* factors counsel us to limit defendants' duty here.

we conclude that duty did not extend to preventing the maskless man from attacking plaintiff.  Plaintiff has alleged no facts, nor can he, to show a reasonable retailer could anticipate that allowing an unmasked shopper into the store—or failing to tell him he should wear a mask—could result in that individual attacking another shopper.[14]  As plaintiff alleged, the purpose behind Lowe's' alleged duty to prohibit unmasked shoppers from entering the store was to prevent those individuals from potentially infecting other shoppers with the COVID-19 virus. But that is not the harm plaintiff alleged here.  Plaintiff never contracted COVID-19.  Rather, plaintiff alleged he was harmed because the unmasked man spit in his face, leading him to fear he had been infected with the COVID-19 virus.  It was the unmasked man's *attack* that allegedly harmed plaintiff, not his mere presence in the store.

Moreover, the measures plaintiff alleged Lowe's was required to take to fulfill its duty to protect him against the man's attack—barring his entry and making him put on a mask —would require *heightened* foreseeability.  Plaintiff alleged there was "no employee or security guard at the door refusing entry to maskless customers"; and Lowe's employees did not "tell the man to comply with the law," "refus[ed] to intervene in a criminal battery," and "allow[ed] [the attacker] to leave without hindrance."

---

[14]    Plaintiff alleged a woman was assaulted by a maskless shopper at a Lowe's store in Virginia in July 2020, but that was after the events alleged in plaintiff's FAC.

In *Delgado*, our Supreme Court explained a business is not required to hire guards unless " 'heightened' foreseeability of third party criminal activity on the premises exists—shown by prior similar incidents or other indication of a reasonably foreseeable risk of violent criminal assaults in that location." (*Delgado, supra*, 36 Cal.4th at p. 240.) Plaintiff alleged no such facts here that would have required Lowe's to post guards. He alleged he "discovered there was [a guard] at Defendants' primary competitor, Home Depot," when he went to a Home Depot store the next day. That another store *chose* to hire a guard does not impose *a duty* on Lowe's to do so, however.[15] As we said, the 6/18/20 order did not impose a duty on Lowe's to enforce it, and the attack on plaintiff did not have even a minimal degree of foreseeability, much less the heightened foreseeability necessary to impose a duty on Lowe's to post guards. (*Morris, supra*, 36 Cal.4th at pp. 270–271 [" '[A]s a general matter, imposition of a high burden requires heightened foreseeability, but a minimal burden may be imposed upon a showing of a lesser degree of foreseeability.' "]; *Delgado*, at p. 237 [" 'the scope of duty

_____

[15] Months later, around November 4, 2020, the Los Angeles City Council passed Ordinance No. 186809, to "empower[ ]" business owners and operators "to require every patron to wear a face covering when on the premises of a business or when seeking or receiving services." The ordinance thus "authorized" any business in the City of Los Angeles "to refuse admittance or service to any person who refuses or fails to wear a [f]ace [c]overing when on the premises of the business or when seeking or receiving service." The ordinance does not *require* businesses to refuse admittance or service to unmasked individuals, however. In any event, it was passed long after the incident.

22

is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed' "].)

Nor is a proprietor's "duty to warn patrons of known dangers . . . and, in circumstances in which a warning alone is insufficient, . . . to take other reasonable and appropriate measures to protect patrons or invitees from imminent or 'ongoing' criminal conduct" implicated by plaintiff's allegations. (*Delgado, supra*, 36 Cal.4th at p. 241.)  In *Delgado*, the plaintiff, who was patronizing the defendant bar, received menacing stares from another bar patron and his friends.  (*Id.* at pp. 230–231.) Plaintiff's wife warned the bar's indoor security guard, and the couple left to avoid a fight.  (*Id.* at p. 231.)  The inside guard did not accompany them to their car and the outside guard was not at his post.  Plaintiff was attacked in the parking lot.  (*Ibid.*) The high court concluded that, because the defendant bar "had actual notice of an impending assault," it had "an obligation to take reasonable, relatively simple, and minimally burdensome steps to attempt to avert that danger."  (*Id.* at p. 250.)  As it was foreseeable an assault would occur if the hostile bar patrons were not separated from plaintiff, those measures included using the bar's *existing* security guard to dissuade the group from leaving and ensuring the *existing* outside guard was available to help maintain the separation.  (*Id.* at pp. 245–247, 250.)

Plaintiff can allege no similar facts here.  Despite plaintiff's contention, he has not alleged he was facing danger from "imminent or ongoing criminal assaultive conduct" to which defendants would have a duty to take reasonable measures to respond.  (*Morris*, *supra*, 36 Cal.4th at p. 270.)  Plaintiff saw the man and "[f]rom about 40 feet away," questioned him about how he got in the store.  Plaintiff alleged he sought out store

23

employees to tell them "the man was maskless and moving about the [s]tore." He allegedly asked the employees "to tell the man to comply with the law," not that he feared an impending assault. Indeed, plaintiff alleged he continued "to track the man's location from a safe distance as the man moved about the [s]tore," not that he moved away from the man or left him alone for fear he would be attacked.

Assuming the truth of plaintiff's allegations, and drawing all reasonable inferences from them, no reasonable juror could find plaintiff's complaint to the store's employees that a shopper wasn't wearing a mask would have put the employees on notice that the maskless shopper would attack plaintiff by spitting on him or otherwise. (*Delgado, supra*, 36 Cal.4th at pp. 235–236 [noting duty to take reasonable steps to protect an invitee or patron from third party act arises where "proprietor . . . has reason to believe from observation or experience, that the conduct of another endangers" the invitee or patron].) Accordingly, the face of the FAC reveals the store's employees had no reason to believe the unmasked man was a danger to plaintiff so as to give rise to a duty to speak to him or take some other action, as in *Delgado*. Nor has plaintiff alleged facts to support a reasonable inference the employees could have anticipated the man would attack plaintiff if they did not ask him to put on a mask or remind him that he should wear one.

Furthermore, a business owner has a duty to take only *reasonable* measures to protect its invitees from foreseeable third party conduct. Requiring employees of a home improvement store—who were not hired to provide security as were the guards in *Delgado*—to detain a customer, or otherwise prevent the customer from leaving the store, not only is

24

objectively unreasonable, but imposes a burden on the employees not warranted by the unforeseeable nature of the incident. (Indeed, by *not* pursuing the unmasked man as he left the store, defendants effectively diffused the situation.)  Nor can we reasonably infer from the alleged facts that less burdensome measures—such as posting a sign reminding customers to wear a mask—would have been effective in preventing the attack.[16] (*Delgado, supra*, 36 Cal.4th at p. 238 [scope of duty is determined " 'by a balancing of "foreseeability" of the criminal acts against the "burdensomeness, vagueness, and efficacy" of the proposed security measures' "].)

Finally, plaintiff apparently contends he sufficiently alleged defendants' failure to act *after* the incident was a breach of their duty of care.  He contends he alleged defendants "failed to summon aid or police, or to try preventing the spitter's departure," arguing that, had they done so, he "could have insisted his attacker be tested for Covid."  Plaintiff does not allege, nor can he, that the unmasked man injured him—or was about to injure him—to give rise to Lowe's duty "to provide ' "assistance [to] their customers who become ill or need medical attention." ' " (*Morris, supra*, 36 Cal.4th at p. 270.)  The attack here was not ongoing as in *Morris*, so that calling the police or a manager would have been a reasonable action to take to prevent a foreseeable harm.  In *Morris*, a restaurant's employees did not call police as they watched—over a period of seven or

---

[16]     Assuming the burden of posting a sign or otherwise communicating with customers about mask wearing is low, that *Rowland* factor would not compel imposing liability in this case given the *absence* of foreseeability.

eight minutes—an individual get into a fistfight with the plaintiff in the restaurant's parking lot, run inside the restaurant and grab a knife, stab the plaintiff in the parking lot, and then chase the plaintiff down and stab him again. (*Id.* at pp. 266–267.) The court explained when "assaultive conduct is imminent . . . or occurring in plain view," it isn't difficult " ' to appreciate the strong possibility of serious injury' to persons against whom such imminent or ongoing criminal conduct is aimed." (*Id.* at p. 271.) Thus, the restaurant owed a duty to "summon aid" for the plaintiff by having its employees call 911—a "generally minimally burdensome method of seeking assistance"—or by other "similar minimal measures" that would be " 'appropriate and reasonable under the circumstances.' " (*Id.* at pp. 276–277.)

Here, in contrast, after the man spit in plaintiff's face, the attack was over. Plaintiff alleges no facts indicating the man continued to attack him or was on the verge of attacking him again. Plaintiff alleged the man "approached again to within a few feet," but does not allege anything else happened between them or that he was further harmed by that approach. The man left the store "[s]everal minutes later." Accordingly, after the spitting incident—that did not leave plaintiff physically injured or in need of medical aid—there was no minutes-long "imminent," "ongoing" criminal conduct to which defendants had a duty to respond, as in *Morris.* (Cf. *Janice H. v. 696 North Robertson, LLC* (2016) 1 Cal.App.5th 586, 596 [premises owner has " 'a duty to respond to events *unfolding* in its presence' " (citing *Delgado, supra*, 36 Cal.4th at p. 245, italics added)].) Moreover, plaintiff alleged the employee—who said he was not allowed to call the police—did act. He told the men " 'to move away from each other.' " And, as discussed, requiring a mere employee to stop

26

a third party from leaving the store is by no means a "minimal measure[ ]" that would be appropriate or reasonable.

In short, the FAC alleged no facts—nor has plaintiff articulated any facts that he could allege—to demonstrate defendants could foresee the unmasked man would attack plaintiff if the precautionary measures plaintiff suggested (posting a guard, talking to the man, calling a manager or police) weren't taken, regardless of whether those precautions were burdensome or not. Defendants' duty thus did not extend to protect plaintiff from the spitting attack. As the third party conduct here was not foreseeable, we need not address the remaining *Rowland* factors. (See *Delgado, supra*, 36 Cal.4th at p. 237, fn. 15 [other *Rowland* factors "may dictate *against* expanding the scope of a landowner's duty to include protecting against third party crime, even where there is sufficient evidence of foreseeability" (italics added)]; *Brown, supra*, 11 Cal.5th at pp. 217–218 [*Rowland* factors are applied to determine whether duty should be excused or limited].)

#### ii. Causation

In any event, based on the facts pleaded, plaintiff cannot establish defendants' alleged negligent conduct was the proximate cause of plaintiff's harm as a matter of law. " ' "[P]roximate cause 'is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct.' " ' " (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 353.) "Causation in the law of negligence is not determined by a linear projection from a 'but for' premise. Instead, it is expressed in terms of 'foreseeability' and is limited by the policy that cause must be 'proximate.' " (*Brewer v. Teano*

27

(1995) 40 Cal.App.4th 1024, 1030 (*Brewer*).) " 'Ordinarily, proximate cause is a question of fact which cannot be decided as a matter of law from the allegations of a complaint. . . . Nevertheless, where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law.' " (*State Hospitals,* at p. 353.)

" 'An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.' " (*Brewer, supra*, 40 Cal.App.4th at pp. 1030–1031, quoting Rest.2d Torts, § 441, subd. (1).) " 'A superseding [also known as supervening] cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.' ([Rest.2d Torts,] § 440.) If the cause is superseding, it relieves the actor from liability whether or not that person's negligence was a substantial factor in bringing about the harm. ([Rest.2d Torts,] § 440, com. b.)" (*Brewer*, at pp. 1030–1031.)

A third party's intervening, intentional conduct is not necessarily a supervening cause. (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 770.) Rather, " '[i]f the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.' " (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 58, quoting Rest.2d Torts, § 449.) In other words, if an injury occurred due to " ' "a later cause of independent origin" ' " the question of causation revolves around whether the later or intervening cause " ' "was foreseeable by the defendant,

28

or if not foreseeable, whether it caused the injury of a type which was foreseeable." ' "  (*Cole*, at p. 770.)  " ' "[I]f, however, it is determined that the intervening cause was not foreseeable *and* that the results which it caused were not foreseeable, then the intervening cause becomes a supervening cause and the defendant is relieved from liability for the plaintiff's injuries." ' " (*Ibid.*)

Here, the risk of physical attack was not the hazard to which defendants allegedly exposed plaintiff by allowing an unmasked customer in the store or by failing to communicate with customers that they should wear masks.  Again, the purpose of mask wearing is to prevent the unintentional infection of others with the COVID-19 virus.  As we discussed, plaintiff does not allege he contracted the COVID-19 virus at all, much less because the unmasked man was in the store.  His alleged harm stems from his *fear* of contracting the virus because the man *intentionally spit in his face*.  And, again, no reasonable person would conclude that allowing an unmasked individual into the store, or not asking him to wear a mask, could lead to a physical attack, much less one involving the plaintiff being spit upon.  Being spit at is not the type of injury anyone would expect from the presence of an unmasked shopper in a store.

Moreover, the unmasked man intentionally spit on plaintiff *after* plaintiff—not the unmasked man—made the first move, so to speak, and continued to "track" him through the store, despite the man's rudely expressed desire that plaintiff leave him alone.  No reasonable retailer could have anticipated the scenario that unfolded.  Not only did plaintiff purposefully engage with the unmasked shopper despite his fear of catching a contagious virus from him, but the unmasked shopper's reaction to plaintiff's

pestering by spitting in plaintiff's face could be described only as extraordinary. (*Brewer, supra*, 40 Cal.App.4th at p. 1032 [" 'if the independent intervening act is highly unusual or extraordinary, not reasonably likely to happen and hence not foreseeable, it is a *superseding* cause, and the defendant is not liable' " (quoting 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 975, p. 366)].)

Nor can we infer from the FAC that the employees' failure to call the police, or to try to prevent "the spitter's departure" —*after* the man already had spit on plaintiff—contributed to plaintiff's harm. Plaintiff argues that, if they had, he "could have insisted his attacker be tested for Covid." Because defendants did not stop the unmasked man, plaintiff argues, he "was left to suffer the distress of fearing he contracted the virus until he could be tested weeks later." Plaintiff contends "[t]hat is the real injury creating a triable issue of whether [defendants] breached their duties." Plaintiff, however, has not alleged, nor proffered, any facts from which one reasonably could infer the spitter could have been forced to take an immediate COVID-19 test—or that an immediate test was even available—thereby preventing plaintiff's alleged emotional distress. Moreover, plaintiff asserted he was unable to be tested for "weeks" after the incident. His argument the unmasked man somehow could be made to test and would have been able to test sooner than plaintiff is mere conjecture that we need not accept.

### iii. Damages

Plaintiff's negligence claim fails, in any event, because the injury he suffered due to defendants' alleged breach of duty —emotional distress stemming from his fear of contracting the COVID-19 virus and becoming seriously ill or infecting his wife—

30

does not constitute a compensable injury or support a claim for damages, as plaintiff has not alleged he actually was exposed to the virus. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 975, 999–1000 (*Potter*).)  Plaintiff admits he did not contract the virus, and he did not allege he otherwise was physically injured by defendants' alleged negligence.  Rather, plaintiff alleged he suffered "personal fear and anguish" from the conditions at the store that led to the incident.

In *Potter,* our high court addressed a plaintiff's ability to recover damages for negligently inflicted emotional distress in the absence of a physical injury or illness, based on a fear of cancer after exposure to a toxin.  The plaintiffs there had been exposed to toxic chemicals in domestic water wells that increased their risk of developing cancer in the future, although none suffered from cancer.  (*Potter, supra*, 6 Cal.4th at p. 975.)  Our high court held plaintiffs could recover such damages if they were "exposed to a toxic substance which threatens cancer" due to defendant's negligence, and their "fear stem[med] from a knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that [they would] develop the cancer in the future due to the toxic exposure."  (*Id.* at p. 997.)

Our Supreme Court also held that, where a defendant has acted with oppression, fraud, or malice in breaching its duty— as plaintiff alleged here—the plaintiff need not meet the "more likely than not threshold."  (*Potter*, *supra*, 6 Cal.4th at p. 999.)  In those circumstances, the court held, "in the absence of a physical injury or illness, a plaintiff may recover damages for negligently inflicted emotional distress engendered by a fear of cancer . . . if the plaintiff pleads and proves that:  (1) as a result of the defendant's negligent breach of a duty owed to the plaintiff,

31

he or she is exposed to a toxic substance which threatens cancer; (2) the defendant, in breaching its duty to the plaintiff, acted with oppression, fraud or malice as defined in Civil Code section 3294; *and* (3) the plaintiff's fear of cancer stems from a knowledge, corroborated by reliable medical or scientific opinion, that the toxic exposure caused by the defendant's breach of duty has significantly increased the plaintiff's risk of cancer *and* has resulted in an actual risk of cancer that is significant." (*Id.* at pp. 999–1000, fn. omitted.)

Plaintiff contends he sufficiently alleged his ability to recover emotional distress damages under this standard because whether his "fear [of contracting COVID-19] has medical and scientific corroboration is a question of fact." We do not disagree, but plaintiff has missed the trial court's and defendants' point. Applying *Potter* here, the "toxic substance" is the COVID-19 virus itself, which threatens to infect an individual and make the individual severely ill.

Here, plaintiff essentially alleged he feared he would contract the COVID-19 virus—and therefore become ill or infect his wife and make her ill—because the unmasked shopper spat on him. He does not allege the maskless man had the COVID-19 virus, however. Thus, plaintiff has not alleged he was exposed to a toxic agent—here, the virus itself—such that he could have been infected with it. Plaintiff therefore has not alleged a required element to recover emotional distress damages based on defendants' alleged negligence. And, as plaintiff will not be able to prove the unmasked man had the COVID-19 virus, amendment here would be futile. Because he cannot allege

32

recoverable damages, plaintiff cannot allege a viable cause
of action for negligence.[17]

For all the above reasons, plaintiff's negligence claim
against Lowe's and Renderos—whom plaintiff has sued in his
capacity as "the store manager on duty" who allegedly "directed,
authorized, supervised, and approved the conditions, policies and
practices" that plaintiff "encountered"—fails as a matter of law.

   d.     *Plaintiff's public nuisance claim also fails*

Civil Code section 3479 defines a nuisance as "[a]nything
which is injurious to health . . . or is indecent or offensive to
the senses, or an obstruction to the free use of property, so as to
interfere with the comfortable enjoyment of life or property . . . ."
A public nuisance is "one which affects at the same time an
entire community or neighborhood, or any considerable number
of persons, although the extent of the annoyance or damage
inflicted upon individuals may be unequal." (Civ. Code, § 3480.)
"A private person may maintain an action for a public nuisance,
if it is specially injurious to himself, but not otherwise." (Civ.
Code, § 3493.) In other words, "[t]he damage suffered must be
different in kind, not merely in degree, from that suffered by

---

[17] Plaintiff claims he need allege only defendants' breach
of duty caused him nominal damages under Civil Code section
3360. As defendants note, that is not the case. (See *Duarte v.
Zachariah* (1994) 22 Cal.App.4th 1652, 1661–1662 [" '[A]ctual
damage' in the sense of 'harm' is necessary to a cause of action in
negligence; nominal damages are not awarded."]; *Fields v. Napa
Milling Co.* (1958) 164 Cal.App.2d 442, 447–448 [availability of
nominal damages under Civil Code section 3360 does not apply
to negligence cause of action].)

other members of the public." (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1349.)

The alleged public nuisance that plaintiff sought to enjoin is defendants allegedly having allowed and encouraged customers to enter the West Hills store without wearing a mask. Plaintiff alleged defendants did so despite knowing maskless customers "might be" carriers of COVID-19 with a "potential" to infect "many times their number and contribute to the uncontrolled spread of the coronavirus, with staggering consequences to the public." Plaintiff also alleged these "conditions"—the allowing of unmasked persons into the store, who might have had COVID-19—were "unlawful, noxious, indecent, and offensive— and in fact, potentially lethal to a reasonable person, and affected a substantial number of persons."

Plaintiff further alleged this nuisance was "specially and particularly injurious" to him because he "was assaulted and battered" in a manner that "significantly increased his likelihood of contracting COVID-19 on top of the unreasonable risk of exposure to which Defendants subjected him and all members of the public."

Plaintiff's alleged harm is not "different in kind" from that other members of the public allegedly suffered from unmasked shoppers being allowed inside the store: an alleged increased risk of being exposed to, and infected with, COVID-19. Rather, plaintiff alleged he suffered a different *degree* of harm—a "significantly increased . . . likelihood of contracting COVID-19." (Cf. *Birke v. Oakwood Worldwide* (2009) 169 Cal.App.4th 1540, 1543, 1549–1550 (*Birke*), relied on by plaintiff [in public nuisance case based on landlord's failure to abate secondhand smoke in common area, plaintiff's alleged "aggravation" of childhood

34

asthma and chronic allergies due to the secondhand smoke was sufficiently different in kind from "increased asthma and lung cancer" the general public faced].)  He thus had no standing to state a claim for public nuisance based on defendants having allowed unmasked shoppers in the West Hills store.

Plaintiff nevertheless argues his alleged emotional distress from the spitting attack, "that caused him to fear that he contracted" COVID-19, was "a personal bodily injury both 'special and peculiar' and 'different in kind' from the exposure to [COVID-19]" he alleged other customers suffered.  (Citing *Birke, supra*, 169 Cal.App.4th at p. 1550 [noting "Restatement Second of Torts recognizes, 'When the public nuisance causes personal injury to the plaintiff . . ., the harm is normally different in kind from that suffered by other members of the public and the tort action may be maintained.' (Rest.2d Torts, § 821C, com. d, p. 96.)"].)  Plaintiff alleged the nuisance—unmasked shoppers invited into the store—"allowed" the spitting attack to occur, which resulted in his alleged personal injury of emotional distress.  According to the FAC, however, the unmasked man spat on plaintiff—causing his alleged personal injury— after plaintiff initiated verbal contact with him, tracked his movements in the store, and announced to the man that he was calling the police.

Nevertheless, as we discussed, plaintiff did not, and cannot, allege facts from which a reasonable juror could find defendants could have foreseen that allowing unmasked shoppers into the store would lead to one of them spitting on a masked shopper. And, it is the man having spit on plaintiff that he contends makes the harm he suffered different in kind from the potential exposure to COVID-19 that shoppers generally would experience

from the presence of unmasked individuals.  As the trial court explained, "When a negligence and a nuisance cause of action rely on the same facts regarding lack of due care, as is the case here, the nuisance claim is considered a negligence claim and 'stands or falls with the determination of the negligence cause of action.' "  (Citing *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 542.)  As we have concluded plaintiff's negligence claim fails because defendants neither owed plaintiff a duty to require the unmasked shopper to comply with the 6/18/20 order, nor could have foreseen the spitting "attack," plaintiff's nuisance claim fails for the same reasons.

Finally, plaintiff sought injunctive relief in connection with his claim for public nuisance, but there is nothing to enjoin. As the trial court noted, the spitting incident that resulted in plaintiff's alleged injury occurred in the past, and plaintiff has alleged no facts demonstrating an ongoing problem of unmasked patrons spitting on masked patrons.  Moreover, as defendants note, the CDPH allowed its universal indoor masking requirement to expire a year ago on February 15, 2022. (Citing <https://www.cdph.ca.gov/programs/cid/dcdc/pages/covid-19/guidance-for-face-coverings.aspx> [as of Mar. 3, 2023], archived at <https://perma.cc/853R-JFQD>.)  Accordingly, even if plaintiff could allege a different or foreseeable injury, he could not state a claim for relief.  (E.g., *Donald v. Café Royale, Inc.* (1990) 218 Cal.App.3d 168, 184 ["Injunctive relief will be denied where, at the time of the order or judgment, no reasonable probability exists of the recurrence of the past acts.  An injunction should not be granted as punishment for past acts where it is unlikely that they will recur."].)

e.      *Plaintiff has not pleaded a valid claim for fraud*[18]

The elements of fraud are misrepresentation, knowledge of falsity, intent to defraud (induce reliance), justifiable reliance, and resulting damage.  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)  A fraud cause of action must be specifically pleaded.  (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1249.)

Plaintiff alleged he "entered *and remained*" (italics added) in the West Hills store in reasonable reliance on Lowe's' recorded statements[19]—on the radio and in the store—about Lowe's' priority being the health of its customers, which he believed meant Lowe's was complying with the 6/18/20 order; and those representations were false.

As the trial court found, the alleged false representations are not sufficiently specific.  Plaintiff did not allege how the statement, " '[O]ur customers' health is our priority during the COVID-19 virus,' " is equivalent to an affirmative representation that Lowe's would ensure its customers wore masks in its store.  Plaintiff did not allege what Lowe's said or did that justifiably made him believe that was the case.  Moreover, the statement itself is too vague to be actionable—it is a generalized assertion that makes no promise as to specific actions.  (See, e.g., *Wilson*

---

[18]     Plaintiff argues he has stated, or can amend to state, a claim of fraud against Renderos.  Defendants argue he can't.  Based on our review of the record, plaintiff dismissed that cause of action against Renderos before the court ruled on the demurrers.

[19]     The FAC also mentions "written" representations but does not allege what those are.  Plaintiff does not mention any on appeal.

*v. Houston Funeral Home* (1996) 42 Cal.App.4th 1124, 1139 [representation that funeral home " 'would provide for a dignified and respectful funeral and burial service' " would be too general to support fraud claim but finding other allegations on different issue sufficiently specific to support claim].)

Notably absent from the FAC are any allegations that Lowe's made any statement about requiring patrons to wear masks in its stores on or before June 28, 2020. Indeed, the FAC's allegations demonstrate plaintiff was not justified in his interpretation that it would. Plaintiff alleged there were no signs outside the store advising shoppers masks were required. Moreover, plaintiff alleged he *remained* in the store in reliance on Lowe's purported representation that it would enforce the 6/18/20 order, yet he saw the unmasked man only a few minutes after entering the store.

Plaintiff's fraud claim thus fails and cannot be amended to state a viable claim. Plaintiff also alleged Lowe's concealed several "facts"—all of which relate to his allegations of what Lowe's employees failed to do before, during, and after the incident. He does not allege, nor can he, that Lowe's had a duty to disclose any of those "facts." (See, e.g., *Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 162 [duty to disclose fact to plaintiff required element for fraudulent concealment].) They thus are not actionable.

> f. *The district court's remand order does not require reversal as to Renderos*

Plaintiff contends that, because the district court found Renderos was not a sham defendant, his causes of action against Renderos necessarily are sufficient to survive demurrer. Plaintiff's contention is not well-taken. The district court merely

found "there exists at least a possibility that state law imposes liability on . . . Renderos for negligence under the circumstances alleged in the complaint or in a future amended complaint." That finding, however, was made in the limited context of determining whether Renderos was fraudulently joined to defeat diversity jurisdiction and contains no legal analysis of the issues. Accordingly, we give it no weight.

**2.** ***Sanctions awarded under section 128.7***

a. *Applicable law and standard of review*

Section 128.7 provides that an attorney or unrepresented party, who presents—whether by signing, filing, submitting, or later advocating—a pleading, motion, or other similar paper, certifies it has legal and factual merit, and has not been "presented primarily for an improper purpose." (§ 128.7, subd. (b)(1)–(3).)

"A claim is factually frivolous if it is 'not well grounded in fact' and it is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' " (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440 (*Peake*).) "In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. [Citation.] A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' " (*Ibid.*)

" 'Because our adversary system requires that attorneys and litigants be provided substantial breathing room to develop and assert factual and legal arguments, [section 128.7] sanctions should not be routinely or easily awarded even for a claim that is arguably frivolous' [citation], and instead 'should be "made with

39

restraint." ' [Citation.] Indeed, even if a plaintiff could not successfully defend against either demurrer or summary judgment, that alone is insufficient to support the sanction of dismissal." (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1121 (*Kumar*), fn. omitted.)

The moving party first must serve, without filing, the motion and allow the opposing party 21 days to withdraw the offending pleading. (§ 128.7, subd. (c)(1).) If the pleading is not withdrawn, the moving party may file the motion. (*Ibid.*)

We review a section 128.7 sanctions award for abuse of discretion. (*Peake, supra*, 227 Cal.App.4th at p. 441.) "We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.] To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice." (*Ibid.*)

b. *The court erred in granting defendants' motion*

Here, defendants served their separately noticed motion on plaintiff—who by then was in pro. per.—about 10 days after plaintiff filed his FAC. Defendants filed the motion more than 21 days later, after plaintiff did not dismiss the FAC. Defendants' motion thus complied with the procedural requirements of section 128.7, subdivision (c).

Defendants asserted sanctions were warranted because the FAC's claims had no legal or factual support under section 128.7, subdivision (b)(2)–(3). But their primary argument was that plaintiff had presented the FAC for an improper purpose under subdivision (b)(1).

In support of their motion, defendants submitted evidence that, in the summer of 2020, including around the time plaintiff visited the Lowe's store, plaintiff had played softball with other

40

players, some of whom did not wear masks, and sometimes himself did not wear a mask while actively playing. Defendants also asked the court to take judicial notice—which it did— of plaintiff's lawsuit filed in December 2020 against people with whom he played softball, alleging they had not abided by mask orders issued by the State and the City of Los Angeles.

Defendants argued this evidence showed plaintiff had filed the FAC against defendants for an improper purpose— primarily to coerce them to settle—because plaintiff was willing to participate in games where others did not wear masks and to violate City orders. Defendants also argued plaintiff's lawsuit against the softball defendants itself was filed in retaliation of those defendants and frivolous, demonstrating his suit here also was filed for purposes other than to vindicate a right.

The trial court agreed. The court ruled it "appear[ed]" the claims in the FAC were presented and maintained for an improper purpose based on (1) their lack of legal and evidentiary support; and (2) plaintiff's "conduct as evidenced in this case and the [softball] case." The court found it "appear[ed] that the true reason for filing and maintaining the action is to coerce settlement and/or retaliate against Defendants because they did not act in the manner Plaintiff desired."

We do not find substantial evidence supports the court's factual findings. We cannot conclude that plaintiff's tactics in an unrelated lawsuit filed months after this one, and against parties unrelated to the defendants here, has any bearing on whether the FAC here was filed for an improper purpose, "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (§ 128.7, subd. (b)(1).) If the defendants in the softball action believe plaintiff has sued them for an

improper purpose then they can move for sanctions against him in that case.

We agree the record shows plaintiff can be overzealous at times. But plaintiff's unrelated lawsuit and participation in outdoor softball games with unmasked players does not demonstrate the *primary* purpose for filing and maintaining the FAC here was to retaliate against defendants. Moreover, the record shows plaintiff actively litigated his suit, and thus was not primarily using it to attempt to "extract a settlement" from defendants. (See *Peake, supra*, 227 Cal.App.4th at p. 449 [plaintiff who did not engage in affirmative discovery for more than a year after filing lawsuit against one of the defendants or otherwise prosecute her claims against him showed lack of good faith belief in validity of claims].)

Nor do we find the record supports finding plaintiff's conduct in asserting the FAC's claims was objectively unreasonable. The court found plaintiff's claim that Lowe's had a duty to enforce the 6/18/20 order without evidentiary support, in part because plaintiff had violated City orders that had closed the softball fields, and had participated in games with unmasked individuals. The court found plaintiff's conduct demonstrated plaintiff's shopping in a store with unmasked individuals did not expose him to an unreasonable risk of contracting COVID-19. We do not see how playing softball *outdoors* with unmasked people is the same as shopping *indoors* with unmasked people. Accordingly, that evidence does not support the court's finding.

And, although we have concluded the court properly sustained defendants' demurrers to the FAC, we cannot conclude that is sufficient to support sanctions. (*Kumar, supra*, 71 Cal.App.5th at p. 1121.) Plaintiff's attorney—who filed both

the initial complaint and the FAC—declared he would not have filed plaintiff's case "if [he] did not believe Defendants had violated the law and caused [plaintiff] significant harm." He also declared his reasons for substituting out of the case did not reflect "doubts about the merits" of plaintiff's claims or have anything to do with plaintiff having played softball games around the time of the incident or his lawsuit against the softball defendants. We thus cannot say " 'any reasonable attorney would agree [plaintiff's claims are] totally and completely without merit.' " (*Peake, supra*, 227 Cal.App.4th at p. 440.)

Even if plaintiff's claims were legally frivolous, however, the sanctions imposed here do not reflect the purpose of the statute. Section 128.7, subdivision (d) provides, "A sanction imposed for violation of subdivision (b) shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated." Attorney fees and expenses "incurred as a direct result of the violation" may be awarded. (§ 128.7, subd. (d).) Here, however, the court awarded defendants the *total* amount of attorney fees they had incurred since plaintiff filed his initial complaint (when he was represented), including in removing the case to federal court, *and* their fees in responding to plaintiff's original complaint that he dismissed. Defendants did not serve their sanctions motion, however, until March 2021. In these circumstances, we cannot conclude awarding nearly $95,000 in sanctions was limited to what would be sufficient to deter the filing of a frivolous action.

Accordingly, we conclude the court abused its discretion in granting defendants' motion and awarding $94,704.33 in sanctions against plaintiff.

43

### 3. *Defendants' motion for sanctions on appeal*

On June 7, 2022, defendants filed a motion in this court asking us to award monetary sanctions against plaintiff under rule 8.276 of the California Rules of Court on the ground plaintiff's May 24, 2022 motion to augment the record on appeal was frivolous. Plaintiff sought to augment the record with a declaration a witness signed on May 23, 2022. Plaintiff argued the declaration "refute[d]" false statements one of the softball defendants made in a declaration defendants submitted to the trial court in support of their section 128.7 motion for sanctions. The "refut[ed]" testimony relates to the timing of plaintiff's participation in softball games, mentioned above.

We denied the motion to augment and plaintiff's motion to take evidence on appeal,[20] filed November 2, 2022, for the reasons stated in defendants' oppositions to those motions. We did not give notice that we were considering imposing sanctions. (Cal. Rules of Court, rule 8.276(c).)

California Rules of Court, rule 8.276 authorizes a Court of Appeal, on its own or a party's motion, to impose sanctions on a party or attorney for "[f]iling a frivolous motion." (Rule 8.276(a)(3).) As defendants note, the declaration plaintiff sought to add to the record on appeal never was before the trial court. It thus was not the proper subject of a motion to augment. (See rule 8.155(a)(1)(A) [on party's motion court may order record augmented to include "[a]ny document filed or lodged in the case

---

[20] In that motion, plaintiff asked us to admit into evidence a declaration from the softball defendant correcting his earlier declaration about the timing of the softball games.

in superior court"]; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["Augmentation does not function to supplement the record with materials not before the trial court."].)

Defendants also assert plaintiff filed the motion for an improper purpose, "namely, to influence the justices who will decide the appeal by placing the issue before them even if his motion to augment is denied." Defendants attached an email from plaintiff to their counsel, stating, "Regardless of the Court of Appeal's ruling, . . . this will put the matter of the false evidence you presented to the court below and relied on in your Respondent's Brief, before the Court of Appeal and the California Supreme Court."

Whether to impose appellate sanctions is a matter within our discretion. (*Winick Corp. v. County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1181–1182.) We are troubled by plaintiff's use of a motion to augment to try to fix his admitted "mistake" in not refuting the purported false declaration in the trial court. Plaintiff is a licensed attorney and should know better. Nevertheless, giving plaintiff the benefit of the doubt, he appears to have done so not for an improper purpose but to correct a misstatement on which he honestly believed the trial court improperly relied. Moreover, defendants' requested sanctions of $5,760 in attorney fees is excessive. Defendants' counsel declared her firm spent *36 hours* to meet and confer with plaintiff, oppose his motion, and draft the motion for sanctions. Plaintiff's motion was not complex. Responding to it, and drafting the motion for sanctions, did not warrant almost an entire work week of attorney time. We decline to exercise our discretion to impose sanctions.

45

## DISPOSITION

We affirm the dismissal of plaintiff's FAC.  We reverse the order awarding $94,704.33 in sanctions against plaintiff. The trial court is directed to enter a new judgment striking the sanctions award.  The parties are to bear their own costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



EDMON, P. J.



LAVIN, J.